**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| PS AMERICA, INC., | § | |
| | § | Case No. 09-37209 |
| Debtor. | § | |

**EMERGENCY MOTION OF THE DEBTOR FOR ORDER**
**(A) AUTHORIZING THE DEBTOR (I) TO OBTAIN POSTPETITION**
**FINANCING PURSUANT TO SECTION 364 OF TITLE 11**
**OF THE UNITED STATES CODE; (II) TO GRANT LIENS AND SUPERPRIORITY**
**CLAIMS; AND (III) TO OBTAIN EMERGENCY POSTPETITION FINANCING**
**PENDING FINAL HEARING AND (B) SCHEDULING FINAL HEARING**

PS America, Inc., the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), moves the Court (the "Motion") for entry of an order authorizing (A) for the entry of the proposed interim order (the "Interim Order") in substantially the form attached hereto as **Exhibit "A"** and a final order (the "Final Order") authorizing the Debtor (i) to obtain postpetition financing pursuant to section 364 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in accordance with the term sheet (the "Term Sheet") annexed hereto as **Exhibit "B"**, among the Debtor and Phoenix Wholesale, LLC as lender ("Postpetition Lender"); (ii) to grant liens and superpriority claims to and on behalf of and for the benefit of the Postpetition Lender in all Collateral (as such term is defined herein) to secure any and all of the DIP Obligations (as such term is defined herein); and (iii) pending a final hearing on this Motion (the "Final Hearing"), to obtain emergency postpetition loans and financing under the Term Sheet to and including the date on which the Final Order is entered in the amount of $2,200,000 (the "Interim Facility"); and (B) in accordance with Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to schedule the Final Hearing and

approve notice with respect thereto.  In support of this Motion, the Debtor respectfully states as follows:

## I.
## STATUS OF THE CASE AND JURISDICTION

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.      The statutory predicates for the relief requested herein are sections 105(a) and 364 of the Bankruptcy Code.

## II.
## BACKGROUND

4.      On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      On the Petition Date, the Debtor also filed motions or applications seeking certain typical "first day" orders.  The factual background regarding the Debtor, including its current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Affidavit of James W. Traweek, Chief Executive Officer of PS America, Inc. in Support of First Day Motions and Applications* (the "Traweek Affidavit"), filed concurrently herewith and fully incorporated herein by reference.

6.      The Debtor has continued in possession of its properties and is operating and managing its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      No request has been made for the appointment of a trustee or examiner and a creditors' committee has yet to be appointed in this chapter 11 case.

### III.
### BANKRUPTCY RULE 4001 CONCISE STATEMENT

8.      By this Motion, the Debtor requests:

    (a)    the entry of a proposed Interim Order in substantially the form attached hereto as **Exhibit "A"** and a Final Order authorizing the Debtor:

        (i)    to obtain postpetition financing pursuant to section 364 of the Bankruptcy Code by entering into the Term Sheet, substantially in the form annexed hereto as **Exhibit "B"**, between the Debtor and the Postpetition Lender;

        (ii)    to grant liens and superpriority claims to and on behalf of and for the benefit of the Postpetition Lender in all Collateral to secure any and all of the DIP Obligations; and

        (iii)    pending the Final Hearing, to and including the date on which the Final Order is entered, to obtain emergency postpetition loans and financing in an amount not to exceed $2,200,000 (the "Interim Facility");

    (b)    in accordance with Bankruptcy Rule 4001(c)(2), that this Court schedule the Final Hearing and approve notice with respect thereto.

9.      The material provisions of the proposed debtor-in-possession financing are summarized as follows and set forth in the following sections of the Term Sheet and/or, as applicable, the Interim Order:

    (a)    <u>Borrower</u>:  The Debtor.  *See* page 1 of the Term Sheet.

    (b)    <u>Lender</u>:  Phoenix Wholesale, LLC.

    (c)    <u>Facility</u>:  $2,600,000 maximum principal amount upon entry of a Final Order, with multiple draws of which no more than $2,200,000 following entry of the Interim Order, which may be drawn before entry of a Final Order.

    (d)    <u>DIP Fee</u>:  1% of principal of Loan, payable upon the earlier to occur of maturity or default.

(e)     Pricing:   Prime rate as published in The Wall Street Journal plus 3% adjusted to the beginning of each calendar quarter.

(f)     Principal Amortization:  Deferred to maturity.

(g)     Interest:  Payable monthly in arrears.

(h)     Maturity:  150 days from the Petition Date.

(i)     Collateral:   First priority liens on all post-petition assets of Borrower (including upon entry of the Final Order, all avoidance actions and avoidance action recoveries); and (b) all pre-petition assets, subject to and junior to any valid, perfected prepetition liens or security interests, including but not limited to those held by FirstMerit Bank.  Carve-out for U.S. Trustee's fees, court costs and professional fee carveouts.

(j)     Conditions Precedent to Fund:  DIP budget approved by the Lender Executed loan documents.  Entry of Interim DIP financing order in form and substance approved by Lender.

(k)     Defaults:  Tied to Covenants section (see below).

(l)     Cash Management:   DIP shall establish a Lockbox Account at an institution acceptable to Lender or shall otherwise implement a cash management system acceptable to Lender.

(m)     Adequate Protection:  Customary for DIP loans, including superpriority claim status.  Proceeds from the sale of assets on which FirstMerit Bank holds a valid, perfected first priority prepetition security interest shall be segregated and paid to FirstMerit Bank.

(n)     Reporting Requirements and Variances:   13 week rolling cash flow budget.  Weeks sales reports.  Weekly reports of performance against DIP budget.

(o)     Covenants:

    1. Richard Harmon shall be appointed as the Chief Restructuring Officer with full authority to make on behalf of the Debtor all decisions related to the on-going operation of the existing stores of Debtor, restructuring of the operations of Debtor, determination as to acceptance or rejection of all executory contracts and executory leases, the settlement of all allowed claims of creditors and the offering for sale of all stores including the process to be followed in the offering for sale of all stores, all subject to any necessary

Bankruptcy Court approval.  Mr. Harmon may only be replaced with the Postpetition Lender's consent and any successor CRO shall be acceptable to the Lender.

2.  Debtor will fund the postpetition rent payments respecting the stores listed on the attached Exhibit A (to the Term Sheet) in accordance with the Real Estate Term Sheet (the "Non-Rejected Leases").  The Debtor shall not file a motion to reject the Non-Rejected Leases without Lender's prior consent.  PS Buildings, Ltd. shall agree to modify the Non-Rejected Leases to the extent necessary to accommodate the rental terms set forth on the Real Estate Term Sheet.

3.  Debtor shall file a motion within ten (10) days after the Petition Date to reject the leases with respect to those stores listed on the attached Exhibit B (to the Term Sheet)  ("Rejected Leases").  Except to the extent approved by the Lender and required by the Bankruptcy Code or Bankruptcy Court, the Debtor shall not use DIP financing proceeds to fund operating costs of the Rejected Leases Stores.

4.  Debtor may continue to purchase product from Marett, Inc. so long as all such transactions are at market-competitive pricing and on normal terms associated with arms-length transactions.

5.  Except for those franchise agreements associated with the Rejected Leases stores, Debtor shall not reject any  franchise agreements with Leading Edge Marketing, Inc. ("LEMI")

6.  The Debtor will remain obligated under its existing Franchise Agreements, including but not limited to royalties, without regard to the rescinded letter agreement by and between LEMI and Borrower dated July 27, 2009.  The Debtor will remain obligated under its existing Member Agreement with ProSource Cooperative, Inc. without regarding to the rescinded letter agreement by and between ProSource Cooperative, Inc. and Borrower dated July 27, 2009.  The Debtor must comply with such Franchise Agreements and Member Agreements in all respects from and after the Petition Date.

7.  Subject to the DIP budget, the Debtor shall fulfill valid, open customer orders at all stores for which the Debtor has received customer deposits as of the Petition Date.  It shall constitute an Event of Default under the DIP Facility if the amount of prepetition customer deposits exceeds $5.5 million.

8. Immediately upon entry of an Interim Order: (a) Jim Traweek will resign as a director of ProSource Cooperative, Inc. and as an employee, officer, and director of Debtor, and (b) John Marett will immediately resign as an employee, officer and director of Debtor.

9. Within ninety (90) days after the Petition Date, the Debtor must file a motion calling for the sale of substantially all of the Debtor's assets, which motion shall be reasonably acceptable to the Lender.

10. Upon entry of the Final Order, the Debtor shall release CCA, LEMI, ProSource Cooperative, Inc. and Lender for prepetition obligations not specifically identified as surviving. This release shall not be binding upon the Debtor's bankruptcy estate until the earlier of (a) 45 days after the first meeting of creditors under Section 341 or (b) 45 days after appointment of a Creditors' Committee. Upon entry of the Interim Order, Jim Traweek and John Marett shall release CCA, LEMI, ProSource Cooperative, Inc. and Lender.

11. All related party transactions must be approved by the Postpetition Lender in advance.

12. Lender's reasonable legal fees and other out-of-pocket expenses to be paid by Debtor and accorded same priority as DIP loan.

13. The letter agreement by and between LEMI and Borrower dated July 27, 2009 is hereby terminated, and Borrower shall remain obligated under its existing Franchise Agreements, including but not limited to royalties. The letter agreement by and between ProSource Cooperative, Inc. and Borrower dated July 27, 2009 is hereby terminated and Borrower will remain obligated under its existing member agreement with ProSource Cooperative, Inc.

(p)    Postpetition Lender's Right to Bid on Assets:   To the fullest extent permitted by the Bankruptcy Code and other applicable law, the Postpetition Lender may credit bid at any sale conducted pursuant to Section 363 of the Bankruptcy Code.

## IV.
## THE PREPETITION FINANCING

10.    The following is presented upon information and belief, and upon reliance on others familiar with the Debtor's books and records, financial operations, affairs and history.

11.    On or about September 16, 2005, the Debtor and FirstMerit Bank, N.A. (the "Prepetition Lender") entered into that certain Corporate Resolution to Borrow/Grant Collateral, wherein the Debtor agreed to repay the Prepetition Lender the sum of $2,000,000, together with interest. As a part of said loan transaction, the Debtor executed a Promissory Note (the "Note"), a Loan Agreement, and/or other Related Documents (collectively, the "Loan Documents"). Arising from the Loan Documents, the Debtor granted the Prepetition Lender a security interest in: (i) all inventory; (ii) chattel paper; (iii) accounts; (iv) equipment; and (v) general intangibles.

12.    Subsequently, on January 10, 2007, the Debtor and the Prepetition Lender entered into that certain Corporate Resolution to Borrow/Grant Collateral, wherein the Debtor agreed to repay the Prepetition Lender the sum of $2,500,000.  The Debtor granted the Prepetition Lender a security interest in: (i) all inventory; (ii) chattel paper; (iii) accounts; (iv) equipment; and (v) general intangibles. Concurrently therewith, on January 10, 2007, the Debtor and Prepetition Lender entered into that certain Modification of Loan Documents whereby the Debtor and Prepetition Lender agreed to modify the Loan Documents, changing the Debtor's commitment under the Loan Documents from $2,000,000 to the new commitment amount of $4,000,000.  The Prepetition Lender does not have a perfected security interest in "cash collateral," as that term is defined in Section 363(a) of the Bankruptcy Code.

## V.
## RELIEF REQUESTED

13.     By this Motion, the Debtor seeks the entry of the Interim Order and the Final Order regarding the relief requested herein.  Such Interim and Final Orders, *inter alia*, will authorize the Debtor to obtain postpetition secured financing in an aggregate amount at any one time outstanding of up to $2,200,000 on an interim basis, and up to $2,600,000 on a final basis, in accordance with the terms and conditions set forth in the proposed Term Sheet among the Debtor's Postpetition Lender.

14.     This Motion also seeks approval of the Term Sheet, the material terms of which are described above.  In summary, the principal elements of the Term Sheet are as follows:

   (a)     The Postpetition Lender will lend the Debtor funds in an amount up to $2,600,000 in the aggregate at any time outstanding (or as otherwise provided in the Term Sheet) with such amounts to be used to fund, as necessary, the continuance of the Debtor's business, solely in compliance with the Budget.

   (b)     Pursuant to Section 364(d)(l) of the Bankruptcy Code, the liens and security interests granted to the Postpetition Lender by the Debtor pursuant to the Term Sheet will constitute first priority, and valid liens upon and security interests in the Collateral and are not and will not be subject to any claims, set-offs, or defenses by the Debtor subject to the Carve-Out Expenses and Permitted Priority Liens.

   (c)     The Term Sheet also contains representations, warranties and events of default customarily found in credit agreements of this nature, as described above and as set forth therein.

## VI.
## BASIS FOR RELIEF REQUESTED

15.     Approval of the Term Sheet will provide the Debtor with immediate and ongoing access to cash and borrowing availability to pay its current and ongoing operating expenses, including postpetition wages and salaries and utility and vendor costs.  Unless the expenses of operations are paid in the interim, the Debtor will be forced to immediately cease operations, which would likely (a) result in irreparable harm to the business, (b) deplete going concern value

and quash the opportunity for a sale, and (c) jeopardize the Debtor's ability to maximize the value of its estate.  The credit provided under the Term Sheet will enable the Debtor to continue to satisfy its vendors, service its customers, pay its employees, and operate the business and in an orderly and reasonable manner to preserve and enhance the value of its estate for the benefit of all stakeholders.  Accordingly, the timely approval of the relief requested herein is imperative.

A.      **The Postpetition Financing**

16.      Even with the success in reducing fixed costs, the Debtor has not been able to generate sufficient cash flows to meet its continuing obligations.  In light of continued global economic instability, the Board of Directors, in the exercise of its reasonable business judgment ultimately determined that the most effective way to maximize the value of the Debtor's estate for the benefit of its creditors is to seek protection under the Bankruptcy Code in order to complete a prompt and orderly liquidation of substantially all of its assets through a sale of the company as a going concern.  The Debtor believes that proceeding under chapter 11 will maximize the value of such assets and will reduce potential risks, contingencies and uncertainties during the chapter 11 process.

17.      In order to operate during this chapter 11 proceeding and thereby have an opportunity to complete the orderly sale of its assets, the Debtor will need additional financing, almost immediately.  Without postpetition financing, the Debtor would be unable to continue to operate, and would have to shut down and liquidate.  This would destroy the Debtor's businesses and impose harm on the Debtor's employees, customers, trade venders and other creditors.

18.      The Debtor has been unable to procure sufficient financing in the form of unsecured credit allowable under section 503(b)(1), as an administrative expense under section 364(a) or (b), in exchange for the grant of a superpriority administrative expense claim pursuant

to section 364(c)(1), or secured by a junior lien on the property of the estate pursuant to section 364(c)(3).

19.    In order to prevent the harm that would result from an abrupt halt in the Debtor's operations, the Postpetition Lender has agreed to provide the Debtor with postpetition financing on the terms described in this Motion, and more particularly, in the Term Sheet.

20.    The Postpetition Lender is willing to provide the postpetition financing to facilitate the sale and a structured liquidation in chapter 11.  While the Debtor did not shop postpetition financing or other financial accommodations from any alternative prospective lender, undertaking this financing is consistent with the Debtor's obligation to seek to maximize the value of its assets for the benefit of creditors.

21.    Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code, the Bankruptcy Court may authorize the debtor to obtain credit or incur debt (a) with priority over any and all administrative expenses, as specified in Section 503(b) or 507(a)(2) of the Bankruptcy Code, (b) secured by a lien on property of the estate that is not otherwise subject to a lien, or (c) secured by a junior lien on property of the estate that is subject to a lien.  *See* 11 U.S.C. § 364(c). Section 364(d) provides that, in appropriate circumstances, a debtor may incur debt secured by a senior, or "priming" lien.  The Debtor proposes to obtain the financing set forth in the Term Sheet by providing the Postpetition Lender with, *inter alia,* a priming lien on all of the Debtor's assets, as well as a superpriority claim, and junior liens in certain assets, pursuant to section 364(c)(1), (2), (3) and section 364(d) of the Bankruptcy Code.

22.     Bankruptcy courts grant a debtor considerable deference in acting in accordance with its business judgment. *See In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under Section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest").  *See also In re Funding Systems Asset Management Corp.,* 72 B.R. 87, 88 (Bankr. W.D. Pa. 1987); *In re Simasko Prod. Co.,* 47 B.R. 444, 449 (Bankr. D. Colo. 1985).  Business decisions are made in the board room, not the courtroom.  *See Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court"); *In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same).  "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially."  *Richmond Leasing Co. v. Capital Bank*, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

23.     The Debtor has exercised sound business judgment in determining that a postpetition credit facility is appropriate and has satisfied the legal prerequisites to enter into the financing pursuant to the Term Sheet.  The Term Sheet's terms are fair and reasonable and are in the best interests of the Debtor's estate.  The delays, cost and expense of placing this loan with a new lender, assuming one could be found, would be detrimental to the estates and ultimately diminish creditor recoveries.  Accordingly, the Debtor should be granted authority to enter into the Term Sheet and borrow funds from the Postpetition Lender on the secured, administrative

super-priority basis provided for therein and in the Interim and Final Orders, pursuant to section

364(d) of the Bankruptcy Code, and take the other actions contemplated by the Term Sheet and

the Interim Order and Final Order as requested herein.

24.     Furthermore, Section 364(d) does not require that a debtor seek alternative

financing from every possible lender; rather, the debtor simply must demonstrate sufficient

efforts to obtain financing without the need to grant a senior lien. *See Bray v. Shenandoah Fed.*

*Savings & Loan Ass'n (In re Snowshoe Co.),* 789 F.2d 1085, 1088 (4th Cir. 1986) (trustee was

not required to seek credit from every possible lender and the information provided regarding

unsuccessful contact with financial institutions in the geographic area was sufficient to establish

that credit was not available without granting a senior lien); *In re 495 Central Park Ave. Corp.,*

136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (debtor testified to numerous failed attempts to

procure financing from various sources, explaining that "most banks lend money only in return

for a senior secured position"); *In re Aqua Assocs.,* 123 B.R. 192, 197 (Bankr. E.D. Pa. 1991)

(debtor adequately established that some degree of priming of loan was necessary if debtor was

to obtain funding).

25.     The Debtor submits that the circumstances of this case require the Debtor to

obtain financing pursuant to section 364(c) and section 364(d) of the Bankruptcy Code and,

accordingly, the Term Sheet reflects the exercise of the Debtor's sound business judgment.

**B.      The Term Sheet Terms are Fair, Reasonable, and Appropriate**

26.     The proposed terms of the Term Sheet are fair, reasonable, and adequate under

the circumstances.  The terms and conditions of the Term Sheet were negotiated by the parties in

good faith, and were instituted for the purpose of enabling the Debtor to meet ongoing

operational expenses while in chapter 11 and implement an orderly liquidation of the Debtor's remaining assets for the benefit of creditors.

27.     To further illustrate that the terms are fair, reasonable and adequate, the proposed Term Sheet and the Interim Order provide that the security interests and administrative expense claims granted to the Postpetition Lender are subject to the Carve-Out.  In *In re Ames Dept. Stores*, 115 B.R. 34 (Bankr. S.D.N.Y. 1990), the court found that such "carve-outs" are not only reasonable, but necessary to ensure that official committees and the debtors' estate will be assured of the assistance of counsel. *Id*. at 40.

**C.      The Proposed Adequate Protection Should be Authorized**

28.     Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used . . . by [a debtor in possession], the court, with or without a hearing, shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." *See* 11 U.S.C. § 363(e).  Section 361 of the Bankruptcy Code delineates the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens, and other forms of relief.  11 U.S.C. § 361.  What constitutes adequate protection must be decided on a case-by-case basis. *See In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In re Martin*, 761 F.2d, 472, 474 (8th Cir. 1985); *Shaw Indus. v. First Nat'l Bank (In re Shaw Indus., Inc.)*, 300 B.R. 861, 865-66 (Bankr. W.D. Pa. 2003) (*quoting In re Sharon Steel Corp.*, 159 B.R. 165, 169 (Bankr. W.D. Pa. 1993)).  The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re Swsedeland Bev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("the whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy") (citation omitted).

29.     Nevertheless, adequate protection must be determined on a case-by-base basis, in light of the particular facts and circumstances presented, the focus being that which is required to protect a secured creditor from diminution in the value of its interest in the particular collateral during the use period.  *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990); *Delbridge Production Credit Assoc. and Federal Land Bank*, 104 B.R. 824, 827 (E.D. Mich. 1989); *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *In re Beker Indus. Corp.,* 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

30.     The adequate protection proposed herein to protect the Prepetition Lender's interest in the Prepetition Collateral is fair and reasonable and sufficient to satisfy the requirements of Sections 363(c)(2) and (e) of the Bankruptcy Code.

**D.     The Automatic Stay Should Be Modified on a Limited Basis**

31.     The relief requested herein contemplates a modification of the automatic stay to permit the Debtor to (a) grant the security interests, liens, and superpriority claims described above with respect to the Postpetition Lender and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens; (b) permit the Postpetition Lender to exercise, all rights and remedies under the Term Sheet, the Interim Order, and the Final Order; and (c) implement the terms of the Term Sheets, the Interim Order, and the Final Order.

32.     Stay modifications of this kind are ordinary and standard features of postpetition debtor financing facilities and, in the Debtor's business judgment, are reasonable and fair under the present circumstances.

### E.     Interim Approval Should Be Granted

33.     Bankruptcy Rule 4001 permits a court to approve a debtor's request for financing and use of cash collateral on an interim basis following the filing of a motion requesting authorization to use cash collateral and financing, "only . . . as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing."  Bankruptcy Rule 4001.  In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions.  *See, e.g, Simasko*, 47 B.R. at 449; *see also Ames*, 115 B.R. at 38.

34.     Pursuant to Bankruptcy Rules 4001(b) and (c), the Debtor requests that the Bankruptcy Court conduct an expedited preliminary hearing on this Motion and (a) authorize the Debtors to borrow up to $2,600,000, with multiple draws of which no more than $2,200,000 under the Term Sheet on an interim basis, pending entry of the Final Order, in order to maintain and finance the ongoing operations of the Debtor, and avoid immediate and irreparable harm to the Debtor's estate and all parties-in-interest, and (b) schedule a hearing to consider entry of the Final Order.

35.     The Debtor has an urgent and immediate need for cash to continue to operate. Currently, the Debtor does not have sufficient funds with which to operate the business on an ongoing basis.  Absent authorization from the Bankruptcy Court to obtain secured credit, as requested, on an interim basis pending a final hearing on the Motion, the Debtor will be immediately and irreparably harmed.  The availability of interim loans under the Term Sheet will provide necessary assurance to the Debtor's vendors, employees, and customers of the Debtor's ability to meet its near-term obligations. Failure to meet these obligations and to provide these assurances likely would have a significant negative impact on the value of the business, to the

detriment of all parties-in-interest.   Accordingly, the interim relief requested is critical to preserving and maintaining the going concern value of the Debtor.

## VII.
## BANKRUPTCY RULE 6003 SATISFIED
## AND REQUEST FOR WAIVER OF STAY

36.     The Debtor further submits that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein and in the Traweek Affidavit, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

37.     The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Rule 6004(h) of the Bankruptcy Rules, "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of ten (10) days after entry of the order, unless the court orders otherwise."   As set forth above, the Debtor's use of its pre-petition cash management system is essential to prevent irreparable damage to the Debtor's operations and value.   Accordingly, the Debtor submits that ample cause exists to justify a waiver of the ten (10) day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## VIII.
## NOTICE

38.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known:  (a) the Office of the United States Trustee; (b) the Debtor's pre-petition and post-petition secured lenders; (c) the Debtor's twenty (20) largest unsecured creditors as set forth in the list filed with the Debtor's petition; (d) the Office of the United States Attorney General for the Southern District of Texas; and (e) the Internal Revenue Service.  As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtor

will serve copies of the Motion and any order entered respecting the Motion in accordance with the Local Rules.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests that this Court enter an order granting the relief requested herein and that it grant the Debtor such other and further relief as is just and proper.

Dated:  September 30, 2009                    Respectfully submitted,

                                              GREENBERG TRAURIG, LLP

                                              */s/ Shari L. Heyen*
                                              Shari L. Heyen
                                              State Bar No. 09564750
                                              Federal Bar No. 13664
                                              1000 Louisiana , Suite 1700
                                              Houston, Texas 77002
                                              Telephone: (713) 374-3500
                                              Facsimile: (713) 374-3505
                                              E-mail:  heyens@gtlaw.com

                                              *Proposed Counsel for PS America, Inc.*