**EXHIBIT "B"**

Term Sheet

*WPB 382078568v1*

## PS America, Inc.

### Proposed DIP Term Sheet
### -September 29, 2009-

| | |
|---|---|
| **Borrower:** | PS America, Inc. (as Debtor in Possession) |
| **Lender:** | Phoenix Wholesale, LLC |
| **Facility:** | $2,600,000 maximum principal amount, of which no more than $2,200,000 may be drawn after entry of the Interim Order but before entry of a Final Order. The facility will consist of multiple draws in amounts needed to fund the Budget |
| **DIP Fee:** | 1% of principal of Loan, payable upon the earlier to occur of maturity or default |
| **Pricing:** | Prime rate as published in The Wall Street Journal plus 3% adjusted to the beginning of each calendar quarter |
| **Principal Amortization:** | Deferred to maturity |
| **Interest:** | Payable monthly in arrears |
| **Maturity:** | 150 days from the Petition Date |
| **Collateral:** | (a) First priority liens on all post-petition assets of Borrower (including upon entry of the Final Order, all avoidance actions and avoidance action recoveries); and (b) all pre-petition assets, subject and junior to any valid, perfected prepetition liens or security interests, including but not limited to those held by FirstMerit Bank. Carve-out for U.S. Trustee's fees and other court costs. Professional fee carve-outs will be included up to a maximum amount to be negotiated by the parties. |
| **Conditions Precedent To Fund:** | DIP budget (the "Budget") approved by the Lender<br>DIP loan documents will be signed upon entry of a Final Order.<br>Entry of Interim DIP financing order in form and substance approved by Lender |
| **Defaults:** | Tied to covenants, see below |

| | |
|---|---|
| **Cash Management:** | DIP shall establish a Lockbox Account at an institution acceptable to Lender or shall otherwise implement a cash management system acceptable to Lender. |
| **Adequate Protection** | Customary for DIP loans, including superpriority claim status. Proceeds from the sale of assets on which FirstMerit Bank holds a valid, perfected first priority prepetition security interest shall be segregated and paid to FirstMerit Bank. |
| **Reporting Requirements and Variances:** | 13 week rolling cash flow budget, including customer deposit line items<br>Weekly sales reports<br>Weekly reports of performance against DIP budget |

**Covenants:**

1. Richard Harmon shall be appointed as the Chief Restructuring Officer with full authority to make on behalf of the Borrower all decisions related to the on-going operation of the existing stores of Borrower, restructuring of the operations of Borrower, determination as to acceptance or rejection of all executory contracts and executory leases, the settlement of all allowed claims of creditors and the offering for sale of all stores including the process to be followed in the offering for sale of all stores, all subject to any necessary Bankruptcy Court approval. Mr. Harmon may only be replaced with the Lender's consent and any successor CRO shall be acceptable to the Lender.

2. Borrower will make the postpetition rent payments respecting the stores listed on the attached Exhibit A in accordance with the Real Estate Term Sheet (the "Non-Rejected Leases"). The Borrower shall not file a motion to reject the Non-Rejected Leases without Lender's prior consent.

3. Within ten days after the Petition Date, the Borrower shall file a motion to reject the leases associated with stores to be identified jointly be the Borrower and the Lender. Except to the extent approved by the Lender and required by the Bankruptcy Code or Bankruptcy Court, the Borrower shall not use DIP financing proceeds to fund operating costs associated with any Stores, other than those identified on Exhibit A.

4. Borrower may continue to purchase product from Maretti, Inc. so long as all such transactions are at market-competitive pricing and on normal terms associated with arms-length transactions.

5. Except for those Franchise Agreements associated with the Rejected Leases stores, Borrower shall not reject any Franchise Agreements with Leading Edge Marketing, Inc. ("LEMI").

6. Borrower will remain obligated under its existing Franchise Agreements, including but not limited to royalties, without regard to the rescinded letter agreement by and between LEMI and Borrower dated July 27, 2009. Borrower will remain obligated under its existing Member Agreement with ProSource Cooperative, Inc. without regard to the rescinded letter agreement by and between ProSource Cooperative, Inc. and Borrower dated July 27, 2009. Borrower must comply with such Franchise Agreements and Member Agreements in all respects from and after the Petition Date.

7. Subject to the DIP budget, Borrower shall fulfill valid, open customer orders at all stores for which the Borrower has received customer deposits as of the Petition Date. It shall constitute an Event of Default under the DIP Facility if the amount of prepetition customer deposits exceeds $5.5 million.

8. Immediately upon entry of an Interim Order: (a) Jim Traweek will resign as a director of ProSource Cooperative, Inc. and as an employee, officer, and director of Borrower, and (b) John Marett will immediately resign as an employee, officer and director of Borrower.

9. Within 90 days after the Petition Date, the Borrower must file a motion calling for the sale of substantially all of the Borrower's assets, which motion shall be reasonably acceptable to the Lender.

10. Upon entry of the Final Order, the Borrower shall release CCA, LEMI, ProSource Cooperative, Inc. and Lender for prepetition obligations not specifically identified as surviving. This release shall not be binding upon the Borrower's bankruptcy estate until the earlier of (a) 45 days after the first meeting of creditors under Section 341 or (b) 45 days after appointment of a Creditors' Committee. Upon entry of the Interim Order, Jim Traweek and John Marett shall release CCA, LEMI, ProSource Cooperative, Inc. and Lender.

11. All related party transactions must be approved by the Lender in advance.

12. Lender's legal fees and other out-of-pocket expenses to be paid by Borrower and accorded same priority as DIP loan.

13. The letter agreement by and between LEMI and Borrower dated July 27, 2009 is hereby terminated, and Borrower shall remain obligated under its existing Franchise Agreements, including but not limited to royalties. The

letter agreement by and between ProSource Cooperative, Inc. and Borrower dated July 27, 2009 is hereby terminated and Borrower will remain obligated under its existing member agreement with ProSource Cooperative, Inc.

**Reps and Warranties / Estoppel / Indemnifications:** Customary for DIP financing

**Default Provisions & Remedies:** Customary for DIP financing

**Lender's right to bid on assets:** To the fullest extent permitted by the Bankruptcy Code and other applicable law, the Lender may bid by credit bid at any sale conducted pursuant to Section 363 of the Bankruptcy Code.

**Definitions:** "Interim Order" shall mean that order entered by the Bankruptcy Court approving the DIP financing outlined herein on an interim basis.

"Final Order" shall mean that order entered by the Bankruptcy Court approving the DIP financing outlined herein on a final basis.

"Franchise Agreements" shall mean those franchise agreements by and between the Borrower on the one hand and LEMI on the other.

*No Commitment.* Except for the provisions of paragraph 13, which shall be binding upon the parties immediately, this term sheet is meant to serve an initial presentation of the primary terms of a proposed DIP financing agreement to be executed by and between Borrower and Lender. This term sheet is not a commitment. This proposal may or may not include all of the requirements, conditions and terms required by Lender in the definitive DIP financing agreement and related documents.

PS AMERICA, INC.

By: _____
Name: J TRAWEEK
Title: CEO

PHOENIX WHOLESALE, LLC

By: _____
Name: ROBERT M. WILSON
Title: Sec'ty

_____
Jim Traweek

_____
John Marett

PS AMERICA, INC.

By: _____
    Name: _____
    Title: _____

PHOENIX WHOLESALE, LLC

By: *[signature]*
    Name: ROBERT M. WILSON
    Title: So-etq

_____
Jim Traweek

*[signature]*
John Marett   By:

Exhibit A

**LOCATION**

| | |
|---|---|
| ABQ | Albuquerque |
| CHT | Charlotte |
| CLK | Clear Lake |
| COLE | Columbus East |
| COLW | Columbus West |
| GRE | Greenville |
| HOU | Houston |
| JAX | Jacksonville |
| MON | Monroeville |
| MON | Monroeville |
| PIT | Pittsburgh |
| RAL | Raleigh |
| SAR | Sarasota |
| SAT | San Antonio |
| SUG | Sugarland |
| TPA | Tampa |
| YOU | Youngstown |
| WOD | Woodlands |
| WPB | West Palm Beach |
| NAS | Nashville |
| ~~CLE~~ | ~~Cleveland~~ |
| ~~BWD~~ | ~~Bensonhurst~~ |
| NOL | New Orleans |
| BVL | Bridgeville |
| HDC | Houston Design Center |
| LAS | Las Vegas |
| MEM | Memphis |
| POM | Pompano |
| STM | Stamford |
| VFG | Valley Forge |

Handwritten annotation next to crossed-out entries: "NOT PART OF PS AMERICA, INC"