

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

**ENTERED**
**10/02/2009**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| PS AMERICA, INC., | § | |
| | § | Case No. 09-37209 |
| Debtor. | § | |

**INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN
POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363,
364(c)(1), 364(c)(2), 364(c)(3) AND 364(d), (II) GRANTING ADEQUATE
PROTECTION , AND (III) SCHEDULING A FINAL HEARING
PURSUANT TO FED. R. BANKR. P. 4001(c)**

This matter came before the Court on the motion (the "Motion") of  PS America,

Inc. (the "Debtor") in the above-captioned bankruptcy case (the "Case") for an order  (i)

authorizing the Debtor to obtain postpetition financing from Phoenix Wholesale, LLC. (the "DIP

Lender") pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3) and

364(d), (ii) granting adequate protection to First Merit Bank, N.A. ( the "Prepetition Lender"),

and (iii) scheduling a final hearing on the Motion (the "Final Hearing") pursuant to Rule 4001(c)

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

Due notice of the Motion having been given by the Debtor pursuant to

Bankruptcy Rule 4001(c), and upon all of the pleadings filed with the Court, and upon the record

in these proceedings to date and the record made at the interim hearing on the Motion, and after

due deliberation and consideration and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

A.      The Court has core jurisdiction over these proceedings and the parties and

property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  The statutory predicates for

the relief sought herein are Sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (d).

B.     On the Petition Date, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor has retained possession of its property and continues to operate its business as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

C.     The Debtor has stipulated to the Court and admits that: (i) as of the Petition Date, the Debtor is indebted to the Prepetition Lender in the aggregate principal amount of approximately $4,945,966 (plus interest accrued and unpaid thereof); and (ii) the Prepetition Liens constitute valid, first priority, properly perfected, security interests on the Prepetition Collateral.

D.     No Committee has been appointed in the Case.

E.     An immediate need exists for the Debtor to obtain the Financing in order to enable the Debtor to minimize disruption and to avoid termination of its business operations.

F.     Pursuant to Sections 364(a) and (b) of the Bankruptcy Code, the Debtor is unable to obtain, unsecured credit or secured credit allowable under Section 503(b)(1) of the Bankruptcy Code.  A facility in the amount of the Financing is unavailable to the Debtor except under the terms and conditions of the Financing.  The terms and conditions of the Financing have been negotiated in good faith and at arms' length, and the Financing is being extended in good faith, as that term is used in Section 364(e) of the Bankruptcy Code.

G.     In order to prevent immediate and irreparable harm to the estate of the Debtor pending the Final Hearing, the Debtor requires the Financing to pay the expenses set forth in the Budget through the conclusion of the Final Hearing.

H.      Under the circumstances of the Case, the terms and conditions of this Order are a fair and reasonable response to the Debtor's request for the Financing, and the entry of this Order is in the best interests of the Debtor's estate and its creditors.

I.      The notice provided by the Debtor of the Motion, the interim hearing on the Motion, and the entry of this Order satisfy the requirements of Bankruptcy Rule 4001 and were otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, THE COURT HEREBY ORDERS THAT:**

1.      The Debtor is authorized and empowered to enter into the Financing with the DIP Lender and to use the proceeds of the Financing solely in accordance with and pursuant to the terms and provisions of this Order and the Budget.

2.      The Debtor is expressly authorized and directed to execute and deliver to the DIP Lender all such financing statements, mortgages, deeds of trust, instruments and other documents as the DIP Lender may deem necessary or desirable from time to time, and all such instruments and documents shall constitute valid and binding obligations of the Debtor and shall be enforceable against the Debtor in accordance with their terms.

3.      As adequate protection for the use, sale, lease, depreciation, decline in market price and other diminution in value of the Prepetition Collateral  and the imposition of the automatic stay, the Prepetition Lender (a) is hereby granted adequate protection replacement liens (the "Replacement Liens") on the Prepetition Collateral, which Replacement Liens shall have priority over all other secured claims on such collateral to the same validity, extent and priority as the claims held by the Prepetition Lender against such assets as of the Petition Date and shall further be prior to any administrative expenses of the kind specified in Sections 105, 326, 328, 330, 331, 503(b), 506(a), 507(a), 547(c), 726 (to the extent permitted by law) and 1112

of the Bankruptcy Code, (the "Replacement Liens").   The Replacement Liens and the

superpriority status  granted to the Lender shall be limited to an amount equal to the diminution,

from and after the Petition Date, in the value of the Prepetition Collateral that is compensated by

the payments into the Prepetition Lender Cash Collateral Account (as described below).   The

Replacement Liens shall be in addition to the Prepetition Liens and shall remain in full force and

effect, including as to the proceeds thereof, notwithstanding any subsequent conversion or

dismissal of the Case.

        4.      Notwithstanding anything to the contrary herein, the Debtor shall be

entitled to use Prepetition Stock Inventory in the ordinary course of its business only so long as

the Debtor sets aside and segregates in a separate debtor in possession bank account cash in an

amount equal to the Debtor's cost of such Prepetition Inventory that is so used (the "Prepetition

Lender Cash Collateral Account").  The funds in the Prepetition Lender Cash Collateral Account

shall be paid to the Prepetition Lender only upon further order of the court after notice and

motion.

        5.      As security for the Postpetition Debt, the DIP Lender is hereby granted (a)

pursuant to Section 364(c)(2) of the Bankruptcy Code, a perfected first priority lien on all

Postpetition Collateral subject to the Carve-Outs, and (b) pursuant to Section 364(c)(3) of the

Bankruptcy Code, a perfected junior lien on all Prepetition Collateral that constitutes property of

the Debtor subject to valid, perfected, and unavoidable liens in existence on the Petition Date.

        6.      In addition, for the Postpetition Debt, the DIP Lender is granted, pursuant

to Section 364(c)(1) of the Bankruptcy Code, an allowed claim having priority over any and all

administrative expenses of any kind (to the extent permitted by law), subject in each case only to

the Carve-Outs, provided, however nothing herein shall be deemed to grant DIP Lender a lien in

or priority over any Chapter 5 avoidance actions.  The proceeds of any avoidance action will not be used to pay any § 364(c)(1) claim held by the DIP Lender.

   7. So long as an Event of Default, or an event which with the giving of notice or lapse of time or both would constitute an Event of Default, shall not have occurred and be continuing, (a) the Debtor shall be permitted to pay compensation and reimbursement of expenses allowed and payable under 11 U.S.C. § 330 and § 331 that are consistent with the Budget, as the same may be due and payable, and (b) such payments shall not reduce the Carve-Out.

   8. The DIP Lender shall not be required to file or record financing statements, mortgages, deeds of trust, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the security interests and liens granted pursuant to this Order.  If the DIP Lender shall, in its business judgment, choose to file such financing statements, mortgages, deeds of trust, notices of lien or similar instruments or otherwise confirm perfection of such security interests and liens, all such documents shall be deemed to have been filed and recorded as of the Petition Date, but subject in all respects to the priorities set forth in this Order.

   9. On the Termination Date, at the DIP Lender's election: (a) the Financing shall be terminated and the Postpetition Debt shall be immediately due and payable; (b) subject o the Professional Fee Carve-Out and Court Costs Carve-Out, the Debtor shall be prohibited from using any proceeds from the Postpetition Collateral for any purpose other than application to the Postpetition Debt, in accordance with this Order, until the Postpetition Debt is indefeasibly and finally paid in full; and (c) the DIP Lender may instruct, and may direct the Debtor to instruct, all account debtors of existing and future accounts receivable included in the Postpetition Collateral

to make payments directly to the DIP Lender.  Upon the occurrence of an Event of Default

hereunder, the DIP Lender shall file with the Bankruptcy Court a Notice of Default describing

the nature of the Event of Default and the Debtor and all other parties shall have five business

days to object, and the DIP Lender shall be obligated to lend during such period.  If an objection

is timely filed, the Court shall convene an emergency hearing to determine whether an Event of

Default has occurred and the objector(s) shall bear the burden of determining whether an Event

of Default has occurred.  In the event that no timely objection is filed with this Court, at the DIP

Lender's election and without further notice or order of the Court: (x) the DIP Lender shall have

immediate and automatic relief from the stay with respect to the Postpetition Collateral (without

regard to the passage of time provided for in Rule 4001(a)(3) of the Federal Rules of Bankruptcy

Procedure) and shall be entitled to exercise all rights and remedies available to it with respect to

the Postpetition Collateral, subject to the rights of Prepetition Lender; and (y) the Debtor shall be

authorized and directed to take such actions as the DIP Lender may deem necessary from time to

time to assist the DIP Lender in the exercise of the rights and remedies available to the DIP

Lender, including, without limitation, the surrender of such Postpetition Collateral to the DIP

Lender.

      10.    Unless extended by the Court upon the written agreement of the DIP

Lender, this Order and the Debtor's authorization to use the Financing and the Cash Collateral

shall immediately terminate on the Termination Date.

      11.    The Debtor is further directed to allow the DIP Lender and its designees

access to the premises for the purpose of enabling the DIP Lender to inspect and audit the

Postpetition Collateral and the Debtor's books and records during normal business hours and

upon forty-eight hours' notice  The Debtor is further directed to deliver to the DIP Lender

evidence, satisfactory to the DIP Lender, that (a) the Postpetition Collateral is insured for the full

replacement value thereof, (b) all insurance policies required by the Postpetition Documents or

obtained in connection with the Postpetition Collateral are maintained in full force and effect,

and (c) the DIP Lender is named as loss payee on all such property insurance policies and named

as additional insured on all such liability policies as its interest may appear.

       12.    It shall be an Event of Default if the Debtor shall , without the DIP

Lender's consent, file any request with the Bankruptcy Court seeking to: (a) create or permit to

exist any liens or encumbrances on the Postpetition Collateral; (b) create or permit to exist any

other superpriority status claims that are pari passu with or senior to the claims of the DIP

Lender (except for the Professional Fee Carve-Out and the Court Costs Carve-Out); (c) sell or

otherwise dispose of any Postpetition Collateral except for sales in the ordinary course of the

Debtor's business; and (d) create or permit to exist indebtedness for borrowed money other than

as provided in the Budget.

       13.    Effective upon the entry of the Final Order, the provisions of Section

506(c) of the Bankruptcy Code shall not (either before, on or after the Termination Date) be

imposed upon the DIP Lender or any of the Postpetition Collateral for the benefit of the Debtor,

the Committee, any professional of the Committee, any creditor or any Trustee, regardless of

when the expense to which the underlying claim related was incurred.

       14.    The Postpetition Debt shall accrue interest at the Interest Rate and shall be

payable monthly in arrears on the tenth day of each calendar month for the preceding calendar

month. Upon the occurrence and during the continuance of an Event of Default, the Postpetition

Debt shall accrue interest at the Interest Rate plus 2%. Each borrowing by the Debtor shall

constitute the Debtor's representation and warranty to the DIP Lender that the uses of such borrowing are consistent with the Budget.

15.     The stipulations, admissions and findings contained in paragraph C of this Order shall be binding on the Debtor and, subject to the terms hereof, shall be binding on all other parties in interest in the Case, including, without limitation, any Committee or Trustee, subject only to the rights of any party in interest to object to any of such stipulations and admissions no later than 90 days from the Petition Date.  Except as so provided, this Order shall be binding on all parties in interest in the Case, including, without limitation, any Committee or Trustee.  If (a) this Order never becomes a final and nonappealable order, or (b) if any or all of the provisions contained in this Order are hereafter modified, vacated or stayed by subsequent order of the Court or any other court, then such termination or subsequent order shall not affect: (x) the priority, validity, enforceability or effectiveness of any obligation, indebtedness, liability, lien, security interest, priority or other benefit authorized hereby with respect to Postpetition Debt incurred prior to the effective date of such termination or subsequent order (and all such obligations, indebtedness, liabilities, liens, security interests, priorities and other benefits shall be governed in all respects by the original provisions of this Order); or (y) the stipulations, admissions and findings contained in paragraph C of this Order.  Except as explicitly set forth in this Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Order.

16.     The Final Hearing is scheduled for October 22, 2009 at 2:00 p.m., and may be continued from time to time.  The Debtor is directed to immediately serve a copy of this Order (or cause it to be served) by first-class U.S. mail, postage prepaid, on the DIP Lender, the Prepetition Lender, Debtor's other secured creditors (if any), the Debtor's twenty largest

unsecured creditors and the United States Trustee, which service shall constitute adequate and proper notice of the Final Hearing.  Any objection to this Order must, no later than three Business Days prior to the date of the Final Hearing, be filed with the Court and received by counsel for the Debtor, the DIP Lender, the Prepetition Lender, and the United States Trustee. Any timely and properly filed and served objection will be heard by the Court at the Final Hearing.

17.     Notwithstanding anything herein to the contrary, the Prepetition Lender and the Committee, if and when formed, shall have the same access, information and notice rights as granted to or otherwise enjoyed by the p Lender.

18.     Unless otherwise indicated, the following defined terms shall have their following respective meanings in this Order:

Additional Covenants.  The Debtor shall (i) timely provide all Financial Information to the DIP Lender, (ii) not file a motion with the Bankruptcy court seeking the rejection of any franchise agreements with Leading Edge Marketing, Inc. or Member Agreements with ProSource Cooperative, Inc. without the DIP Lender's prior consent, (iii) within ten days of the Petition Date, the Debtor shall file a motion seeking to reject certain unexpired leases of non-residential real estate, (iv) not engage in any transactions with any Insiders of the Debtor, including but not limited to Maretti, Inc. on other than completely market based terms, (v) within 150 days of the Petition Date file a motion seeking the sale of substantially all of the Debtor's assets in a form reasonably acceptable to the DIP Lender, and (vi) fulfill in the ordinary course of business all valid, open customer orders at all stores for which the Borrower has received customer deposits.

Budget.  The business plan and projected budget for the Debtor attached to this Order as Exhibit A, provided that the Budget may be amended or modified from time to time without further Court order, but only if such amendment is consented to in writing by the Debtor and the DIP Lender, with a copy to the Committee and the United States Trustee.

Carve-Outs.  The Professional Fee Carve-Out and the Court Costs Carve-Out, collectively.

Closing Date.  The date of the closing of the Financing, but in no event later than 10 days after entry of this Order.

<u>Commitment Fee</u>.  The amount of $26,000, payable to the DIP Lender upon the earlier to occur of (i) maturity of the Facility, or (ii) occurrence of an Event of Default.

<u>Committee</u>.  Any official committee appointed to represent unsecured creditors in the Case pursuant to Section 1102 of the Bankruptcy Code.

<u>Court Costs Carve-Out</u>.  A carve-out from the Postpetition Collateral for the payment of all allowed court costs and fees due under 28 U.S.C. § 1930.

<u>Event of Default</u>.  Any one or more of the following: (a) failure by the Debtor to perform any of its obligations in strict accordance with the terms of this Order; (b) failure by the Debtor to timely perform any of the Additional Covenants; (c) an order appointing Richard Harmon (or such other individual acceptable to the Lender) is not entered within ten (10) days after the Petition Date as the Debtor's Chief Restructuring Officer; (d) the Debtor files a plan of reorganization (or any modification thereto) which does not provide for the indefeasible and final payment in full of the Postpetition Debt on the effective date thereof (e) the Case shall be dismissed or converted to a Chapter 7 Case; (f) a Trustee shall be appointed in the Case and the order appointing such Trustee shall not be reversed or vacated within thirty days after the entry thereof; (g) any other superpriority status claim (other than the Carve-Out) which is <u>pari passu</u> with or senior to the claims of the DIP Lender shall be granted in the Case; (h) failure to enter the Final Order more than thirty days after entry of this Order, unless at a hearing on whether to enter a Final Order, the DIP Lender consents on the record to the continuance of the hearing; (i) other than payments authorized by the Bankruptcy Court in respect of accrued payroll and related expenses as of the Petition Date and consistent with the Budget, the Debtor shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any Prepetition indebtedness or payables (including, without limitation, reclamation claims); (j) an order shall be entered reversing, amending, supplementing, staying for a period in excess of ten days, vacating or otherwise modifying this Order; or (k) the amount of valid customer deposits as of the Petition Date shall exceed $5.5 million.

<u>Final Order</u>.  The order to be entered in connection with the Final Hearing, approving the transactions contemplated under this Order on a final basis.

<u>Financial Information</u>.  Beginning no later than <u>October 7, 2009</u>, and continuing on each Tuesday thereafter, the Debtor shall submit the DIP Lender a reconciliation of the results of the Debtor's business operations (including sale, cash receipts and expenses) for the previous week as compared to the corresponding week in the Budget, broken down by the line items set forth in the Budget; and (iii) bi-weekly information as to the Debtor's accrued, unpaid expenses. The Debtor shall also maintain a 13 week rolling cash flow budget.

<u>Financing</u>.  The Postpetition financing provided by the DIP Lender to the Debtor in an amount up to $2,600,000, of which no more than <u>$2,200,000</u> may be drawn prior to entry of a Final Order, subject to the terms and provisions of this Order.

<u>Interest Rate</u>.  Annual prime interest rate equal to the prime rate as published in the Wall Street Journal plus 3% per annum adjusted to the beginning of each calendar quarter.

Insider. Insider shall have the same meaning as set forth in Section 101(31) of the Bankruptcy Code.

Petition Date.  September 30, 2009.

Prepetition Collateral.  All of Debtor's prepetition inventory, chattel paper, accounts, equipment, and general intangibles.

Prepetition Debt.   All indebtedness and obligations of the Debtor to the Prepetition Lender as of the Petition Date.

Prepetition Stock Inventory.  All inventory on hand as of the Petition Date that is held for resale by the Debtor at its showroom locations.  This term shall NOT include any inventory purchased by the Debtor after the Petition Date.

Prepetition Liens.  The liens and security interests granted the Prepetition Lender on the Prepetition Collateral.

Postpetition Collateral.  All of the real and personal property of the Debtor of any description whatsoever, wherever located and whenever arising or acquired, including, without limitation, all real property , cash, accounts, inventory, equipment, fixtures, chattel paper and general intangibles (but excluding causes of action under Sections 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code) and all proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing.

Postpetition Debt.  All indebtedness and obligations of the Debtor to the DIP Lender incurred on or after the Petition Date pursuant to this Order.

Postpetition Liens.  The liens on the Postpetition Collateral granted to the DIP Lender pursuant to this Order.

Professional Fee Carve-Out.  Amounts allowed by the Bankruptcy Court as compensation for fees and expenses for professionals retained by the Debtor under Sections 327 of the Bankruptcy Code which (i) have been accrued but unpaid as of the occurrence of an Event of Default or (ii) are incurred after the occurrence of an Event of Default, up to an aggregate maximum amount of $100,000.  Notwithstanding the foregoing, no portion of the Professional Carve-Out may be utilized for the payment of professional fees and disbursements incurred in connection with any challenge to the amount, extent, priority, validity, perfection or enforcement of the Postpetition Debt of the Postpetition Collateral.

Termination Date.  The earliest of: (i) February 26, 2010; (ii) at the DIP Lender's election, thirty (30) days after the entry of the Interim Order if the Final Order has not been entered prior to the expiration of such 30-day period; and (iii) at the DIP Lender's election, the date of the Final Hearing if this Order is modified at the Final Hearing in a manner unacceptable to the DIP Lender..

Trustee.  Any Chapter 11 Trustee, responsible officer or examiner with enlarged powers relating to the operation of the business of the Debtor (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) appointed or elected in the Case.

Date:_____10 / 2_____, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

**PS AMERICA, INC.**
**DIP Funding Projections**
**Updated for week ending:**

| | Week 1 fcst 10/5/09–10/9/09 | Week 2 fcst 10/12/09–10/16/09 | Week 3 fcst 10/19/09–10/23/09 | Week 4 fcst 10/26/09–10/30/09 | Week 5 fcst 11/2/09–11/6/09 | Week 6 fcst 11/9/09–11/13/09 | Week 7 fcst 11/16/09–11/20/09 | Week 8 fcst 11/23/09–11/27/09 | Week 9 fcst 11/30/09–12/4/09 | Week 10 fcst 12/7/09–12/11/09 | Week 11 fcst 12/14/09–12/18/09 | Week 12 fcst 12/21/09–12/25/09 | Week 13 fcst 12/28/09–1/1/10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning cash balance** | $ - | $(1,413,200) | $(2,213,700) | $(2,678,075) | $(2,770,775) | $(1,843,275) | $(471,025) | $(57,650) | $1,139,100 | $713,900 | $1,068,900 | $843,900 | $(33,600) |
| **Cash outflows:** | | | | | | | | | | | | | |
| Payroll-pre | (100,000) | | | | | | | | | | | | |
| Payroll-post | (330,200) | | | | | | | | | | | | |
| Prepaid rent | | | | | (365,000) | | | | | | | | |
| Monthly rent | | | | | | | | | | | | | |
| Rental Real Estate Taxes | | | | | | | | (67,000) | | | | | |
| Prepaid utilities | | | | | | | | | | | | | |
| Monthly utilities | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) |
| Supplier-20 day pre | (680,000) | | | | | | | | | | | | |
| Supplier-20 day pre-last 3 days | (350,000) | | | | | | | | | | | | |
| Supplier-post | (683,000) | (2,048,000) | (1,365,000) | (1,365,000) | (341,250) | (341,250) | (341,250) | (341,250) | (1,365,000) | (1,365,000) | (1,365,000) | (1,365,000) | (1,365,000) |
| Credit Card Fees-Post | (15,000) | | | | (110,000) | | | | | | | | |
| Referral Fees - Pre | (105,000) | | | | (25,000) | (25,000) | | | | | | | |
| Referral Fees - Post | | | | | (26,250) | (31,500) | | | | | | | |
| Sales Tax | | | | | | | (375,375) | | | | | | (427,500) |
| Royalties - CCA Global | | | | | | | (100,000) | | | | | (100,000) | |
| Adv, Supplies, Insur, etc | (55,000) | (55,000) | (55,000) | (55,000) | (55,000) | (55,000) | (55,000) | (55,000) | (55,000) | (55,000) | (55,000) | (55,000) | (55,000) |
| Chief Restruction Officer | | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) |
| Legal fees | | | (165,375) | (115,000) | | | | (115,000) | (115,000) | | | | (115,000) |
| **Total cash outflow** | (2,358,200) | (3,553,000) | (2,165,375) | (1,982,700) | (962,500) | (517,750) | (1,476,625) | (693,250) | (2,315,200) | (1,535,000) | (2,115,000) | (1,957,500) | (2,340,200) |
| **Cash inflows:** | | | | | | | | | | | | | |
| Store deposits | 875,000 | 1,312,500 | 1,575,000 | 1,750,000 | 1,750,000 | 1,750,000 | 1,750,000 | 1,750,000 | 1,750,000 | 1,750,000 | 1,750,000 | 1,000,000 | 1,000,000 |
| Store deposits - Pre | | 435,000 | | | | | | | | | | | |
| Store deposits - Pre | | 900,000 | | | | | | | | | | | |
| Referral Fees | 17,500 | 26,250 | 31,500 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 20,000 | 20,000 |
| Sales Tax | 52,500 | 78,750 | 94,500 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 60,000 | 60,000 |
| **Total cash inflow** | 945,000 | 2,752,500 | 1,701,000 | 1,890,000 | 1,890,000 | 1,890,000 | 1,890,000 | 1,890,000 | 1,890,000 | 1,890,000 | 1,890,000 | 1,080,000 | 1,080,000 |
| **Net weekly cashflow** | $(1,413,200) | $(800,500) | $(464,375) | $(92,700) | $927,500 | $1,372,250 | $413,375 | $1,196,750 | $(425,200) | $355,000 | $(225,000) | $(877,500) | $(1,260,200) |
| **Ending cash balance** | $(1,413,200) | $(2,213,700) | $(2,678,075) | $(2,770,775) | $(1,843,275) | $(471,025) | $(57,650) | $1,139,100 | $713,900 | $1,068,900 | $843,900 | $(33,600) | $(1,293,800) |
| **Weekly Sales** | 1,750,000 | 1,750,000 | 1,750,000 | 1,750,000 | 1,750,000 | 1,750,000 | 1,750,000 | 1,750,000 | 1,750,000 | 1,750,000 | 1,750,000 | 1,000,000 | 1,000,000 |