IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: § | |
| § | Chapter 11 |
| PS AMERICA, INC., § | |
| § | Case No. 09-37209 (MI) |
| Debtor. § | |

**DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) FOR (A) AUTHORITY TO RETAIN HG, INC. EFFECTIVE OCTOBER 1, 2009, TO PROVIDE CHIEF RESTRUCTURING OFFICER AND ADDITIONAL PERSONNEL AND (B) APPOINTING RICHARD A. HARMON AS DEBTOR'S CHIEF RESTRUCTURING OFFICER**

PS America, Inc., the above captioned debtor and debtor in possession (the "**Debtor**") hereby submits this application (the "**Application**") for entry of an order (a) authorizing the Debtor to retain HG, Inc. ("**Harmon Group**"), *nunc pro tunc* to October 1, 2009, to provide a Chief Restructuring Officer and additional personnel on an as needed basis, pursuant to the terms set forth in that certain engagement letter between the Debtor and Harmon Group dated as of October 1, 2009 (the "**Engagement Letter**") (a copy of which is annexed as Exhibit A to the Declaration of Richard A. Harmon submitted herewith), and (b) approving the appointment of Richard A. Harmon as the Debtor's Chief Restructuring Officer ("**CRO**"). In support of this Application, the Debtor relies upon the Declaration of Richard A. Harmon (the "**Harmon Declaration**") filed in support of the Application.

## I.
## STATUS OF THE CASE AND JURISDICTION

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue of this proceeding and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

3. The statutory predicates for the relief requested herein is sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**").

## II.
## BACKGROUND

4. On September 30, 2009 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. On the Petition Date, the Debtor also filed motions or applications seeking certain typical "first day" orders. The factual background regarding the Debtor, including its current and historical business operations and the events precipitating this chapter 11 filing, is set forth in detail in the *Affidavit of James W. Traweek in Support of First Day Motions and Applications* (the "**First Day Affidavit**"), filed concurrently herewith and fully incorporated herein by reference.

6. The Debtor has continued in possession of its properties and is operating and managing its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. No request has been made for the appointment of a trustee or examiner and a creditors' committee has yet to be appointed in this chapter 11 case.

8. On September 30, 2008, the Debtor filed its Emergency Motion of the Debtor for Order (A) Authorizing the Debtor (I) to Obtain Postpetition Financing Pursuant to Section 364 of Title 11 of the United States Code; (II) to Grant Liens and Superpriority Claims; and (III) to Obtain Emergency Postpetition Financing Pending Final Hearing and (B) Scheduling Final Hearing (Docket No. 14) (the "**DIP Motion**"). On October 2, 2009, the Court approved the debtor-in-possession financing sought in the DIP Motion on an interim basis (Docket No. 21) (the "**Interim DIP Order**").

9. A material covenant provision of the debtor-in-possession financing as set forth in detail in the DIP Motion and the Interim DIP Order is as follows:

> Richard Harmon shall be appointed as the Chief Restructuring Officers with full authority to make on behalf of the Debtor all decisions related to the on-going operation of the existing stores of Debtor, restructuring of the operations of Debtor, determination as to acceptance or rejection of all executory contracts and executory leases, the settlement of all allowed claims of creditors and the offering for sale of all stores including the process to be followed in the offering for sale of all stores, all subject to necessary Bankruptcy Court approval. Mr. Harmon may only be replaced with the Postpetition Lender's consent and any successor CRO shall be acceptable to the Lender.

See DIP Motion p. 4-5 (Docket No. 14).

### III.
### RELIEF REQUESTED

10. By this Application and in compliance with the Interim DIP Order, the Debtor seeks entry of an order pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, substantially in the form submitted herewith, authorizing the Debtor to retain Harmon Group, *nunc pro tunc* to October 1, 2009, to provide the Debtor with a Chief Restructuring Officer and additional personnel on an as needed basis pursuant to the terms set forth in the Engagement

Letter,[1] including, without limitation, the appointment of Richard A. Harmon as the Debtor's Chief Restructuring Officer. A copy of the Engagement Letter is attached as Exhibit A to the Harmon Declaration.

### IV.
### BASIS FOR RELIEF REQUESTED

A.  **Professional Qualifications.**

11.  Mr. Harmon has more than thirty years experience acquiring, restructuring and managing companies in a diverse set of industries. His experience includes both public companies and private transactions. He is the former Chairman and CEO of Global Marine Electronics, Inc., an international marine electronics company. He served as Vice President, COO and senior corporate development executive of Spreckels Industries, Inc. (a $350 Million conglomerate) during its chapter 11 bankruptcy, turnaround and emergence from bankruptcy. In addition, Mr. Harmon has served as the senior operating manager in several private restructuring transactions including as President of Allied Gear and Machine Co., Inc., COO/CFO of Ever Corporation, and as Vice President and Chief Restructuring Office of Griffco Quality Solutions, Inc. In the past ten years Mr. Harmon and associates under his direct supervision have advised on more than twenty bankruptcy or restructuring transactions. Prior to forming Harmon Group and its affiliate Harding Partners, Mr. Harmon was Chief Executive and co-owner of a private St. Louis based investment firm with interests in distribution, manufacturing, software development, construction and venture capital. He was a member of the mergers and acquisitions group at Mark Controls Corporation (a $250M NYSE conglomerate), developed Pacific Rim manufacturing capacity and held senior positions in marketing, engineering and manufacturing with a subsidiary of MCC. Mr. Harmon holds a J.D. from Washington University in St. Louis

---

[1]  Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Engagement Letter.

and is a member of the Missouri Bar. He earned a B.S. in Electrical Engineering from the University of Missouri-Rolla and is a Registered Professional Engineer.

12. In accordance with the Engagement Letter, Mr. Harmon, as the principal Harmon Group professional who will be responsible for the provision of services to the Debtor as the Debtor's CRO, will be available on a as needed basis and will be focused on all aspects of the Debtor's operational and restructuring issues. Mr. Harmon will continue to act under the direction of the Debtor's Board of Directors (the "**Board**"). Upon the mutual agreement of Harmon Group and the Board, additional Harmon Group personnel ("**Additional Officers**") may assist Mr. Harmon in the performance of his duties as described below. The Debtor believes that Mr. Harmon and the resources, capabilities, and experience of the other Additional Officers who may assist him from time to time is crucial to the Debtor's efforts to preserve and maximize the value of its estate for the benefit of its creditors. Mr. Harmon fulfills a critical need that complements the services offered by the Debtor's other restructuring professionals. Neither law firms nor financial advisors have the experience or resources to do the kind of work set forth in the Engagement Letter. For these reasons, the Debtor requires the services of Mr. Harmon as CRO in its chapter 11 case.

B.  **Services to be Rendered.**

13. Pursuant to the Engagement Letter, Harmon Group will provide the following:[2]

   a.  Representing the Debtor in meetings with parties in interest, court proceedings or as otherwise directed by the Debtor in the course of its operation;

   b.  assisting the Debtor in all bankruptcy-related matters including the preparation of all court required disclosure and operating reports;

---

[2] The description of the Engagement Letter herein is a summary. To the extent that this Application and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

c. advising and assisting the Debtor in the development and presentation of communications with shareholders, professionals, advisors, creditors and other parties in interest relative to the Debtor's operations, restructuring efforts and emergence from bankruptcy;

d. analyzing liabilities and/or potential liabilities of the Debtor, including claims filed against the Debtor and its estate;

e. actively supporting the Debtor's Chief Financial Officer and the Chief Executive Officer to maintain/enhance the enterprise value of the business;

f. developing and supervising the Debtor's section 363 sale process (the "**Sale**") of substantially all of the Debtor's assets in this case;

g. assisting the Debtor in developing, negotiating, and pursuing a liquidating plan of reorganization (if appropriate and in the best interests of the Debtor and its estate);

h. assisting the Debtor in analyzing assets and potential causes of action remaining with the Debtor after the closing of the Sale, if any; and

i. performing such other tasks as may be agreed with the Debtor and its Board.

14. The Debtor believes that Harmon Group is qualified and able to provide the foregoing services to the Debtor. Harmon Group and Mr. Harmon have indicated a willingness to act on behalf of the Debtor, on the terms described above and in the Engagement Letter. If this Application is granted, the Debtor's retention of Harmon Group, with Mr. Harmon as CRO, will be approved and Harmon Group will provide services to the Debtor until such time as the parties determine that the services of Harmon Group are no longer needed.

C. **Professional Compensation.**

15. Subject to the Court's approval, and as more fully described in the Engagement Letter, Harmon Group will be compensated at a rate of $410 per hour for the services of Mr. Harmon as CRO. In connection with this engagement, the Debtor has agreed to pay Harmon Group a retainer of $30,000 which approximates two weeks billings of advisory

fees and reimbursable expenses. Further, the Debtor has agreed to compensate Harmon Group for the services of any Additional Officers to assist the CRO, as necessary, at the usual and customary rates charged by Harmon Group for such Additional Officers.

16. The hourly ranges for Additional Officers are: (a) Senior Consultant (litigation support/management) - $350 to $425 per hour; (b) Consultant (company communications/finance support) - $250 to $300 per hour; and (c) Junior Consultant (financial model development) - $150 to $250 per hour. Harmon Group periodically revises its hourly rates.

17. Harmon Group will also seek reimbursement for reasonable out-of-pocket expenses of the CRO, and if applicable, other personnel of Harmon Group, incurred in connection with this assignment, including among other things as travel, lodging and telephone charges.

18. Harmon Group proposes that it will prepare monthly statements summarizing the services provided by Harmon Group, which shall (a) set forth (i) the identity of each of the Additional Officers working on the engagement during the month, (ii) the number of hours worked by Mr. Harmon and each of the Additional Officers each day during the month, (iii) the amounts of compensation received or requested by Harmon Group for the month with respect to Mr. Harmon and each of the Additional Officers, and (iv) a description of the tasks performed each day during the month; and (b) list the expenses incurred by Harmon Group during the month, and shall serve the monthly statements in accordance with the terms of any order entered in the Debtor's case establishing procedures for interim compensation and reimbursement of expenses of professionals. Any objection to a monthly statement must be filed and served on Harmon Group and counsel to the Debtor within twenty (20) days of the date of

service of that monthly statement. All compensation shall be subject to review by the Court if an objection is filed. The Debtor requests that the information requirements of Fed.R.Bankr.P. 2014 be modified and waived to the extent necessary with respect to Harmon Group.

19. If there are changes in the scope of the engagement, Harmon Group may seek an adjustment in the fee arrangement. Any such modification, amendment or supplement to the Engagement Letter shall become effective without further order of this Court provided that prior to the execution of any modification: (a) the Debtor provides notice of such changes to any official statutory committee that may be appointed in this Case; and (b) the proposed changes shall have no material adverse effect on the Debtor's estate or its creditors. In the event the Debtor seeks to materially change the terms of the engagement by either (i) modifying the functions of personnel, (ii) adding new personnel, or (ii) altering or expanding the scope of the engagement, an Application to modify the retention shall be filed.

20. The overall compensation structure described above is competitive to compensation generally charged by business advisory firms of similar stature to Harmon Group for comparable engagements, both in and out of court. The Debtor notes that the compensation payable to Harmon Group is straightforward and economical. Mr. Harmon and the Additional Officers will be engaged as independent contractors to the Debtor, and not as employees of the Debtor, and therefore are not entitled to salaries or wages from the Debtor. Mr. Harmon and the Additional Officers will continue to draw their salaries and receive health and other personal benefits from Harmon Group, thus relieving the Debtor of any payroll-related expense.

**D.      Indemnification.**

21. As part of the overall compensation payable to Harmon Group under the terms of the Engagement Letter, the Debtor has agreed to indemnify Mr. Harmon and the

Additional Officers to the same extent as the most favorable indemnification it extends to its officers and directors under its corporate bylaws and applicable state law, along with insurance coverage under the Debtor's D&O policy.

22. In the event Harmon Group or its affiliates are required by subpoena or other legal process to produce any of their documents or their respective shareholders, members, managers, employees, agents, representatives or subcontractors as witnesses with respect to Harmon Group's services for the Debtor, the Debtor will reimburse Harmon Group for its professional time and expenses, as well as the fees and expenses of Harmon Group's counsel, incurred in responding to such requests.

E. **Harmon Group's Relationships to the Debtor.**

23. To the best of the Debtor's knowledge, information, and belief, Harmon Group has no connection with, and holds no interest adverse to, the Debtor, its creditors, or any other party in interest, or their respective attorneys or accountants, or the Office of the United States Trustee or any person employed in the Office of the United States Trustee, in the matters for which Harmon Group is proposed to be retained except as disclosed in the Harmon Declaration. The Debtor's knowledge, information, and belief regarding certain of the matters set forth in this Application are based upon, and are made in reliance upon, the Harmon Declaration.

24. The Debtor submits that the retention of Harmon Group on the terms and conditions set forth herein is in the best interests of the Debtor, its creditors and all parties-in-interest.

## V.
## APPLICABLE AUTHORITY

25. The Debtor seeks authority to retain Harmon Group under the terms of the Engagement Letter pursuant to section 363 of the Bankruptcy Code, which provides in pertinent part: "The trustee, after notice and a hearing, may, use, sell, or lease, other than in the ordinary course of business property of the estate." 11 U.S.C. § 363(b). Courts interpreting section 363(b) have held that transactions should be approved pursuant to this provision when, as here, they are supported by management's sound business judgment. See, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (citing Fulton State Bankr v. Schipper) (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991); Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (outlining requirements for sale of assets pursuant to section 363); In re Phoenix Steel Corp., 82 B.R. 334, 336-36 (Bankr. D. Del. 1987); Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to debtor's conduct.").

26. The retention of corporate officers is proper under section 363 of the Bankruptcy Code. Courts recognize the applicability of section 363(b) to the use of estate property to compensate individuals employed outside the ordinary course of business. See In re First Svcs. Corp., 25 B.R. 66, 69 (Bankr. D. Conn. 1982). Indeed, courts have relied upon 363(b) as the basis upon which to employ and compensate a financial management services firm similar to Harmon Group that provides professionals to serve as officers or other management-level personnel employed by the debtor. See, e.g., Fedders North Am., Inc., Case No. 07-11176

(BLS) (Bankr. D. Del. Sept. 19, 2007) (approving retention of crisis managers to provide CRO and other personnel); <u>MediCor Ltd.</u>, Case No. 07-10877 (MFW) (Bankr. D. Del. Aug. 24, 2007) (same); <u>Radnor Holdings Corp.</u>, Case No. 06-10894 (PJW) (Bankr. D. Del. Sept. 21, 2006) (same); <u>In re SLI, Inc.</u>, Case No. 02-12608 (MFW) (Bankr. D. Del. Oct. 28, 2002) (approving retention of crisis managers to provide CRO and other officers for debtors to employ); <u>In re Kasper A.S.L., LTD., et al.</u>, Case No. 02-10497 (ALG) (Bankr. S.D.N.Y. April 12, 2002) (approving retention of crisis managers to provide CRO); <u>In re Hayes Lemmerz Int'l, Inc.</u>, Case No. 01-11490 (MFW) (Bankr. D. Del. Mar. 20, 2002) (approving retention of crisis managers to provide CFO, CRO, CAO and other officers for debtors).

27. As described above, the retention of Harmon Group is a material covenant provision under the Interim DIP Order, as such, their retention under the Engagement Letter would greatly benefit the Debtor's estate and creditors. Harmon Group has become involved intimately in the Debtor's chapter 11 efforts, and has been instrumental in helping the Debtor position itself for a successful chapter 11 case.

28. Based upon the foregoing, the Debtor has determined, in the exercise of its business judgment, that the retention of Harmon Group and Mr. Harmon as CRO is in the best interests of the Debtor's estates, creditors and stakeholders. Accordingly, the Debtor respectfully requests that the Court authorize the Debtor to retain Harmon Group in accordance with the terms of the Engagement Letter as set forth herein.

## VI.
## NOTICE

29. Notice of this Application has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) counsel to the Debtor's prepetition secured lenders; (iii) counsel to the Debtor's post petition secured

lenders; (iv) creditors holding the top twenty (20) unsecured claims; and (v) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

30. No previous application for the relief sought herein has been made to this or any other court.

*[REMAINDER OF PAGE INTENTIONALLY BLANK]*

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order in substantially the form submitted herewith: (i) authorizing the Debtor to retain Harmon Group, *nunc pro tunc* to October 1, 2009, to provide to provide a Chief Restructuring Officer and additional personnel on an as needed basis, pursuant to the terms set forth in the Engagement Letter, including, without limitation, the appointment of Mr. Harmon as the Debtor's Chief Restructuring Officer, and (ii) granting such other and further relief as the Court deems just and proper.

Dated: 10/6 , 2009

                                        PS America, Inc., Debtor and Debtor-in-Possession

                                        Michael Tremain
                                        President