IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | |
| | § | Chapter 11 |
| PS AMERICA, INC., | § | |
| | § | Case No. 09-37209 (MI) |
| Debtor. | § | |

**MOTION FOR AN ORDER CONVERTING THE DEBTOR'S
CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7 OF THE
BANKRUPTCY CODE PURSUANT TO 11 U.S.C. §§ 1112(b) AND 105(a)**

The Official Committee of Unsecured Creditors (the "Committee") of PS America, Inc., the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned proposed counsel, submits this motion for an order converting the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code pursuant to 11 U.S.C. § 1112(b) (the "Motion"). In support of this Motion, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

The Committee is disappointed that it is compelled to file this Motion seeking to convert the Debtor's case to one under Chapter 7, however, for the reasons set forth below, the Committee has concluded that the Debtor's estate is experiencing substantial and continuing loss and that there is no reasonable likelihood of the Debtor's rehabilitation. Accordingly, cause clearly exists to convert this case to Chapter 7. It appears that the DIP Lender (defined below), an affiliate of the franchisor of the Debtor, is seeking to use its leverage as a postpetition lender to orchestrate a sale process that will not maximize value to the stakeholders of the estate. As part of the proposed financing, the DIP Lender has sought to impose clearly unreasonable deadlines for the Debtor to effectuate a sale of the Debtor's assets that will only benefit the parent of the DIP Lender.

Worse yet, it appears the DIP Lender will not even agree to provide the funding necessary to pay all of the administrative expenses for the sale process itself. The Committee's concern is amplified by the DIP Lender's decision, as of November 13, 2009, to not advance additional funds pursuant to the interim financing order.

Moreover, the DIP Lender has cut the Committee out of negotiations over a potential plan and/or sale process, as it attempts to pressure the Debtor to accept an unreasonable timetable for a proposed sale. Administrative costs are accruing, and the cash burn continues, with no reasonable exit process in place before the Debtor simply runs out of money. Chapter 11 should not be used solely for the benefit of a secured creditor. If the Debtor intends to allow the DIP Lender to effectively foreclose on its collateral, leaving behind an administrative insolvent estate with no chance of rehabilitation, then this Chapter 11 case should go no further. Under the circumstances, the estate is best served by the appointment of a Chapter 7 trustee, who will marshal the Debtor's assets, conduct an orderly liquidation process, and pursue any claims against third parties the estate may hold. Accordingly, conversion of this case is proper.

## JURISDICTION

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELEVANT BACKGROUND

1.      On September 30, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2.     The Debtor continues to operate its businesses and manage its property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.     No trustee or examiner has been appointed in the Debtor's bankruptcy case.

4.     On October 13, 2009, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code. *See* Docket Nos. 75 & 77.[1]

5.     The Committee selected Lowenstein Sandler PC as its counsel and BDO Seidman, LLP as its financial advisor on October 15, 2009 and October 22, 2009, respectively.

6.     On September 30, 2009 the Debtor filed a Motion for an Order (i) authorizing the Debtor to obtain postpetition financing from Phoenix Wholesale, LLC (the "DIP Lender") pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d), (ii) granting adequate protection to First Merit Bank, N.A. (the "Prepetition Lender"), and (iii) scheduling a final hearing on the Motion (the "Final Hearing") pursuant to Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (the "DIP Motion").

7.     The DIP Lender - Phoenix Wholesale, LLC - is wholly owned by CCA Global Direct, listed by the Debtor as its largest creditor.  CCA Global Direct is also the parent of the Debtor's franchisor, Leading Edge Marketing d/b/a ProSource Wholesale Flooring.  The Debtor is the franchisee as to approximately one-quarter of the ProSource locations.

8.     On October 2, 2009, the Court entered an order (the "Interim DIP Order") granting the DIP Motion on an interim basis. *See* Docket No. 21.  Pursuant to the Interim DIP Order, the Debtor is authorized to borrow up to $2.2 million pending the entry of an

---

[1]     An Amended Notice of Appointment of the Committee was filed with the Court on October 14, 2009.

order approving the DIP Motion on a final basis. *See* Interim DIP Order ¶¶ 5-6, 18. The Interim DIP Order grants to the DIP Lender, among other things, post-petition liens on substantially all of the Debtor's postpetition assets other than Chapter 5 avoidance claims, a junior lien on all prepetition collateral, superpriority administrative expense claims, subject only to the Carve-Out (solely for professionals retained by the Debtor) and exclusive of Chapter 5 avoidance actions, and expedited remedies in the case of a default. *See* Interim DIP Order at ¶¶ 5-6. The proposed Final DIP order that was provided to the Committee (the "Proposed Final DIP Order") contemplates the same liens and priorities as the Interim DIP Order, however, the DIP Lender seeks a lien and superpriority in Chapter 5 avoidance claims, but shall not be entitled to be paid the proceeds of such claims until the DIP Lender has liquidated all of the Postpetition Collateral and applied the net proceeds thereof to the payment of the Postpetition Debt.

9.      The Interim DIP Order also requires that the Debtor file a motion seeking the sale of substantially all of the Debtor's assets in a form reasonably acceptable to the DIP Lender within 150 days of the Petition Date. *See* Interim DIP Order at ¶18. The Proposed Final DIP Order, previously provided to the Committee by the DIP Lender, significantly cuts back this deadline *and requires that the Debtor file a motion seeking the sale of substantially all of the Debtor's assets in a form reasonably acceptable to the DIP Lender, or file a plan that calls for the sale of substantially all of the Debtor's assets, by* November 30, 2009.

10.     On October 30, 2009, the Court entered an order ("Second Interim DIP Order") further extending the Interim DIP Order and scheduling a final hearing on the Motion for November 6, 2009 at 10:30 a.m. Pursuant to the Second Interim DIP Order, the Debtor was authorized to borrow no more than $500,000 (in addition funds already drawn as of October 30, 2009) between the date of the entry of the Second Interim DIP Order and the date of the final hearing on the Motion.

11.     On November 6, 2009, the Court entered the third interim order (the

-4-

"Third Interim DIP Order") further extending the Interim DIP Order and rescheduling the final hearing on the Motion to November 13, 2009 at 1:30 p.m.  Pursuant to the Third Interim DIP Order, the Debtor was authorized to borrow no more than $350,000 (in addition to the approximately $1,350,000 drawn by the Debtor as of November 5, 2009) between November 6, 2009 and the date of the final hearing on the Motion.

12.     On November 13, 2009, the Court entered the fourth interim order (the "Fourth Interim DIP Order") further extending the Interim DIP Order and rescheduling the final hearing on the Motion to November 20, 2009 at 1:30 p.m.  The Fourth Interim DIP Order did not authorize the Debtor to borrow any additional funds.  As of November 12, 2009, the Debtor had drawn approximately $1,700,000 of the $2,200,000.

13.     As of the date of the filing of this Motion, the DIP Lender has refused to make any additional advances to the Debtor pursuant to the Interim DIP Order.  The DIP Lender appears unable to come to an agreement with the Debtor concerning a consensual resolution of this case, and has cut the Committee out of the negotiation process.  All proposed draft DIP financing budgets previously shared with the Committee's professionals contained inadequate funding to cover the estate's reasonably expected administrative expenses.  Based upon the Debtor's own schedules filed with this Court, the Debtor was administratively insolvent on the Petition Date.

14.     Additionally, simultaneously with filing this Motion, the Committee has objected to the Proposed Final DIP Order because a number of the proposed terms are inappropriate under applicable law and will unduly prejudice the rights and interests of the Debtor's estate and unsecured creditors.  *See* Docket  No. 172.

## ARGUMENT

### THIS CASE SHOULD BE CONVERTED TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE

**(i)**      **Under § 1112(b) Of The Bankruptcy Code, A Court Is Required To Convert The Debtor's Chapter 11 Case To A Chapter 7 Case Upon A Showing Of Cause.**

15.      Under § 1112(b) of the Bankruptcy Code, as amended by the 2005 amendments to the Bankruptcy Code, a court shall convert a Chapter 11 case to a Chapter 7 case "for cause" upon the request of a party in interest.[2]  11 U.S.C. § 1112(b).  Section 1112(b) states

> ...on request of a party in interest, and after notice and hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause ….

11 U.S.C. § 1112(b).  Prior to the 2005 amendments to the Bankruptcy Code, § 1112(b) contained the language "may convert" as opposed to the "shall convert" language which now appears in § 1112(b).  One of the few courts to directly address this change to § 1112(b) of the Bankruptcy Code observed:

> This change diminishes the discretion the bankruptcy courts have in conversions to Chapter 7.  If cause for dismissal or conversion to Chapter 7 exists discretion not to dismiss or convert is limited to those instances in which the court makes specific findings that unusual circumstances 'establish that the requested conversion or dismissal is not in the best interests of creditors and the estate.'

*In re Broad Creek Edgewater*, LP, 371 B.R. 752, 759 (Bankr. D. S.C. 2007).  Here, the Court is authorized and, in fact, required to convert the Debtor's Chapter 11 case to a Chapter 7 case upon a showing of cause.

---

[2]      The Committee is a party-in-interest in the Debtor's chapter 11 proceeding.  *See* 11 U.S.C. § 1109(b); *In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004).

16.     A determination of cause is made by the court on a case-by-case basis. *See Halvajian v. Bank of New York (In re Halvajian)*, 216 B.R. 502, 511 (D.N.J. 1998). Before the 2005 amendments to the Bankruptcy Code, § 1112(b) provided a nonexclusive list of ten (10) grounds that constitute "cause" for conversion.   11 U.S.C. § 1112(b)(1)-(10) (2004); *see In re Frieouf*, 938 F.2d 1099, 1102 (10th Cir. 1991); *In re Camden Ordnance Mfg. Co. of Arkansas, Inc.*, 245 B.R. 794, 798 (E.D. Pa. 2000) (noting that § 1112(b) of the Code provides ten (10) bases for dismissing a Chapter 11 case or converting it to one under Chapter 7 of the Code, whichever is in the best interest of creditors and the estate); *In re Mechanical Maintenance, Inc.*, 128 B.R. 382, 386 (E.D. Pa. 1991) (noting that "causes" listed in § 1112(b) are non-exclusive).

17.     As a result of the 2005 amendments to the Bankruptcy Code, § 1112(b) now provides a non-exclusive list of sixteen (16) grounds that constitute cause for conversion. 11 U.S.C. § 1112(b)(4)(A)-(P); *see Nester v. Access Gateway Solutions, Inc. (In re Access Gateway Solutions, Inc.)*, 374 B.R. 556, 560-61 (Bankr. M.D. Pa. 2007) (noting that § 1112(b)(4) of the Code lists 16 illustrative examples of cause for a Chapter 11 case to either be dismissed or converted to a Chapter 7 liquidation).[3]

---

[3]     Section 1112(b)(4) states that "cause" includes—
(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
(B) gross mismanagement of the estate;
(C) failure to maintain appropriate insurance that poses a risk to the estate or the public;
(D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
(E) failure to comply with an order of the court;
(F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
(G) failure to attend the meeting of creditors convened under §341(a) or an examination ordered under Rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
(H) failure to timely provide information or attend meetings reasonably requested by the United States Trustee (or the bankruptcy administrator, if any);
(I) failure to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;

18.     Two such separate and independent grounds are clearly applicable in this case where there is (i) a continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, or (ii) an inability to effectuate substantial consummation of a confirmed plan. 11 U.S.C. § 1112(b)(4)(A) and (M) (formerly § 1112(b)(1) and (2)).  Here, the Court is required to convert the Debtor's Chapter 11 case to a Chapter 7 case because the Committee has met its burden (see discussion below) to prove that each of the above two grounds exists in the Debtor's bankruptcy proceeding. Moreover, the Debtor can offer no evidence to support a specific finding by this Court that unusual circumstances exist which render conversion not in the best interests of creditors or the estate, as required by the amendments to § 1112(b) of the Bankruptcy Code.

>    **(ii)     Cause Exists To Convert The Debtor's Chapter 11 Case To A Chapter 7 Case Because There Is A Continuing Loss To Or Diminution Of The Debtor's Estate And An Absence Of A Reasonable Likelihood Of Rehabilitation.**

19.     Conversion is warranted where a debtor is "suffering substantial or continuing losses to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4)(A); *see also, Access Gateway Solutions*, 374 B.R. at 562 ("[n]egative cash flow and an inability to pay current expenses as they come due can satisfy the continuing loss or diminution of the estate standard for purposes of §1112(b).");  *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003) ("[c]ourts have held that a negative cash flow postpetition and an inability to pay current expenses

---

(J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
(K) failure to pay any fees or charges required under chapter 123 of Title 28;
(L) revocation of an order of confirmation under §1144;
(M) inability to effectuate substantial consummation of a confirmed plan;
(N) material default by the debtor with respect to a confirmed plan;
(O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
(P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.
*See* 11 U.S.C. §1112(b)(4)(A)-(P).

satisfy the elements of § 1112(b)(1)")[4] (*citing In re Route 202 Corp. t/a Lionti's Villa*, 37 B.R. 367, 374 (Bankr. E.D. Pa. 1984) ("[o]bviously, if the debtor has negative cash flow after entry of the order for relief in the Chapter 11 case, the [elements of §1112(b)(1) are] satisfied")); *In re 3868-70 White Plains Road, Inc.*, 28 B.R. 515, 519 (Bankr. S.D.N.Y. 1983) (explaining that full collateralization of a debtor's assets, coupled with a negative cash flow and an inability to pay current expenses, represents cause to convert a Chapter 11 case to a Chapter 7 case); *see also* 7 COLLIER ON BANKRUPTCY ¶1112.04[5] (*citing cases*).

20.     Rehabilitation does not share the same meaning as reorganization as it requires an ability to re-establish the debtor-entity on a firm, sound financial basis.  *See In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991) ("[h]owever honest in its efforts the debtor may be, and however sincere its motives, the [court] is not bound to clog its docket with visionary or impractical schemes for resuscitation.") (*citing Tennessee Publishing Co. v. American Nat'l Bank*, 299 U.S. 18, 22 (1936); *In re ABEPP Acquisition Corp.*, 191 B.R. 365, 368 (Bankr. N.D. Ohio 1996) (*citing In re Wright Airlines, Inc.*, 51 Bankr. 96, 100 (Bankr. N.D. Ohio 1985))).  For example, "visionary schemes that entail risk to creditors without any reasonable probability of success usually warrant prompt conversion to Chapter 7."  *See* 7 COLLIER ON BANKRUPTCY ¶1112.04[5][b]; *see also AdBrite Corp.*, 290 B.R. at 215 ("The purpose of [§ 1112(b) of the Bankruptcy Code] is 'to prevent the debtor-in-possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation.'").  The inherent requirement of rehabilitation is the establishment of cash flow from which current obligations can be met.  *See, e.g., Gateway Solutions*, 374 B.R. at 562.

---

[4]     Both grounds which constitute "cause" relied upon by the Committee in this Motion appear in the pre- and post-amendment versions of § 1112(b) of the Bankruptcy Code.  As such, reference to case law which precedes the 2005 amendments to the Bankruptcy Code is equally applicable post-amendment.

21.     While a debtor should be given a fair opportunity to reorganize, a debtor's opportunity must be balanced against the protection of creditors' interests and the needs of the Chapter 11 system as a whole.  *See* 7 COLLIER ON BANKRUPTCY, 1112.04[5][b] (*citing In re Great Am. Pyramid Joint Venture*, 144 B.R. 780, 790-91 (Bankr. W.D. Tenn. 1992)).  As the *In re AdBrite Corp.* court stated, a debtor "should not continue in control of the business beyond a point at which reorganization no longer remains realistic."  290 B.R. at 215.

22.     In the instant case the Debtor cannot be rehabilitated.  The DIP Lender has ceased making advances to the Debtor, even as the Debtor continues to incur additional administrative expenses each day.  The DIP Lender appears to be unable to come to an agreement with the Debtor over the terms of a reasonable sale process and/or a plan.  Moreover, the Committee has been left out of the negotiations.  The lack of debtor-in-possession financing, coupled with negative cash flow, leaves the Debtor unable to fund any proposed plan.

23.     Further, the Debtor has no intention to reorganize or rehabilitate.  Rather, the DIP Motion contemplates the liquidation of substantially all of the Debtor's assets at lightning speed.  The Interim DIP Order seeks a sale within 150 days of the Petition Date, while the proposed final DIP Order significantly cuts back this deadline.  In fact, the Debtor is required to file a motion seeking the sale of substantially all of the Debtor's assets in a form reasonably acceptable to the DIP Lender, or file a plan that calls for the sale of substantially all of the Debtor's assets, by **November 30, 2009**.  That is only 10 days after the scheduled Final Hearing on the DIP Motion.

24.     Thereafter, the Debtor's estate will be left with no meaningful assets and no means with which to administer the wind-down of its affairs.  The Committee expects that, absent a consensual agreement by all parties in interest, the Debtor will be

administratively insolvent immediately upon consummation of a sale. Thus, the Debtor will have no reasonable prospect of filing or confirming a plan (whether of liquidation or reorganization). If the Debtor's only feasible option is a sale to the DIP Lender, without any meaningful marketing process and at a liquidation price, then such a sale should be conducted by an independent Chapter 7 trustee appointed by the U.S. Trustee's office. It should not be run by the Debtor, at the expense of administrative claimants, so the Debtor's stores can be handed off as a going concern to the DIP Lender at liquation prices.

> **(iii)** **Cause Exists To Convert The Debtor's Chapter 11 Case To A Chapter 7 Case Because It Is Unreasonable to Expect That A Plan Can Be Effectuated.**

25.    Another ground to convert a Chapter 11 case to a Chapter 7 case is where a party-in-interest shows that there is an inability to effectuate substantial consummation of a plan of reorganization or liquidation. 11 U.S.C. § 1112(b)(4)(M); *see also see also United States Savings Assoc. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376 (1988) ("there must be a reasonable possibility of a successful reorganization within a reasonable time."); 5 COLLIER ON BANKRUPTCY 1112.03[ii] at 1112-20. Inability to effectuate a plan arises when the "debtor lacks the ability to formulate a plan or to carry one out." *Halvajian*, 216 B.R. at 511-512 (conversion of debtor's Chapter 11 case appropriate where lower court found that it was "simply impossible" for debtor to confirm a plan); *see also Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989) (explaining that an inability to effectuate a plan arises where debtor lacks capacity to formulate a plan or carry one out).

26.    The Debtor will be unable to effectuate a confirmable plan of liquidation because it appears that any proposed sale of substantially all of the Debtor's assets is not likely to maximize value for the Debtor's estate. Accordingly, any proceeds received are unlikely to satisfy the claims of the DIP Lender, the Prepetition Lender and other

administrative and priority claims, as required under the Bankruptcy Code -- let alone provide any distributions to unsecured creditors.  Rather, the Debtor and the DIP Lender are abusing the Chapter 11 process by proposing to liquidate the Debtor's assets solely for the benefit of the DIP Lender, and at the expense of the unsecured creditors and administrative claimants.

27.    Further, the proposed DIP Facility appears to be nothing more than an attempt to use this Court to facilitate a foreclosure of assets by the DIP Lender.  It is predicated upon an inadequate and completely unreasonable sale process of less than one month, which will likely generate no recovery for the Debtor's estate.  As currently proposed, any proceeds recovered would most likely be used only to repay the DIP Lender and Prepetition Lender, through which the DIP Lender will retrieve its parent's franchise locations at bargain basement prices and pass them along to other franchisees -- with no benefit or consideration for the Debtor's estate or its unsecured creditors (or administrative creditors).  Accordingly, sufficient cause exists to convert this case to Chapter 7.

   **(iv)    It Is In The Best Interests Of The Creditors And The Debtor's Estate To Convert The Chapter 11 Cases To A Chapter 7 Proceeding.**

28.    Once a court determines that cause exists to convert a debtor's Chapter 11 case to a Chapter 7 case, the court is required to convert the case "absent unusual circumstances specifically identified by the court that establish that the requested conversion … is not in the best interests of creditors and the estate . . . ."  11 U.S.C. § 1112(b)(1).  A variety of factors in this case demonstrate that it is in the best interest of the creditors and the Debtor's estate to convert the Debtor's Chapter 11 proceeding to a Chapter 7 proceeding.

29.    First, conversion of a Chapter 11 bankruptcy case meets the best interests of the creditors test where a debtor's assets are neither fixed nor liquidated.  *See In re*

*BTS, Inc.*, 247 B.R. 301, 310 (Bankr. N.D. Okla. 2000); *In re Camden Ordnance Mfg. Co. of Arkansas, Inc.*, 245 B.R. 794, 799 (E.D. Pa. 2000); *In re Brogdon Inv. Co.*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982). The Debtor's assets, which include inventory, fixtures, furniture, equipment, and motor vehicles have not yet been fixed, sold or liquidated. Thus, there are significant assets for a Chapter 7 trustee to oversee and liquidate, including previously unencumbered assets (i.e., avoidance action proceeds) that would remain unencumbered for the benefit of the Debtor's estate and general unsecured creditors. The case for conversion is bolstered by the fact that the Proposed Final Order would encumber the avoidance action proceeds for the benefit of the DIP Lender.

30.     Conversion to Chapter 7 is also in the best interests of the creditors and the estate because conversion to Chapter 7 is necessary to ensure an open asset sale process. Absent conversion to Chapter 7, the Debtor will liquidate its assets for the benefit of the DIP Lender and be forced to convert thereafter as it will become, if it is not already, administratively insolvent.

31.     A Chapter 7 trustee could adequately and transparently marshal and liquidate the Debtor's assets without being subject to a lightning fast sale process implemented for the sole benefit of the DIP Lender. Additionally, a Chapter 7 trustee could determine the extent of the Debtor's assets, evaluate potential avoidance actions, investigate the validity of any other liens, and confirm the existence of other assets currently unknown to the Committee. Accordingly, a Chapter 7 trustee is well suited to administer the estate for the benefit of all creditors. As such, relief is proper in the present case pursuant to § 1112(b)(3) and § 105(a).

32.     Finally, the best interest of the estate analysis focuses on whether the economic value of the estate is greater inside or outside of bankruptcy. *See In re Nugelt*, 142 B.R. 661, 669 (Bankr. D. Del. 1992) (considering whether conversion or dismissal

would maximize the value of the estate for all creditors in light of the debtor's delay in liquidating the estate); *In re Clark*, 1995 WL 495951, at *5 (N.D. Ill. 1995); *In re Staff Inv. Co.*, 146 B.R. 256, 261 (Bankr. E.D. Cal. 1993).  Here, conversion of the Debtor's Chapter 11 case to Chapter 7 will maximize the value of the Debtor's estate primarily because unlike the Debtor, a trustee would work to limit the amount of administrative expenses in order to maximize a distribution to the unsecured creditors.  Quite obviously, the Debtor is liquidating its assets and has no incentive to limit such administrative expenses.  In sum, the Debtor is using the Chapter 11 process solely to liquidate its assets for the exclusive benefit of the DIP Lender -- not to reorganize or to provide distributions to other creditors.  The Debtor's bankruptcy proceeding is nothing more than an attempt to obtain the benefits afforded by a quick sale in Chapter 11 without bearing the burdens and obligations of a legitimate reorganization or liquidation under the Bankruptcy Code (e.g., full disclosure, payment of administrative expenses and distribution to the unsecured creditors, etc.).

33.     Thus, as no unusual circumstances exist to establish that conversion is not in the best interests of creditors and the estate, this case must be converted to a case under Chapter 7 pursuant to §§ 1112(b)(4) and 105(a) of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court convert this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, and grant the Committee such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

Dated:  November 17, 2009

LOWENSTEIN SANDLER PC

By: */s/ Scott Cargill*
    Bruce S. Nathan
    David M. Banker
    Marianna Udem
    1251 Avenue of the Americas
    New York, NY  10020
    Tel:  (212) 262-6700
    Fax: (212) 262-7402

    -and-

    Scott Cargill
    65 Livingston Avenue
    Roseland, New Jersey 07068
    Tel: (973) 597-2500
    Fax: (973) 597-2400

    *Proposed Counsel to the Official Committee*
    *of Unsecured Creditors*