**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| PS AMERICA, INC., | § | |
| | § | Case No. 09-37209 (MI) |
| Debtor. | § | |
| | § | |

**DEBTOR'S OBJECTION TO MOTION OF THE OFFICIAL COMMITTEE**
**OF UNSECURED CREDITORS FOR AN ORDER CONVERTING THE**
**DEBTOR'S CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7 OF**
**THE BANKRUPTCY CODE PURSUANT TO 11 U.S.C. §§ 1112(B) AND 105(A)**
**(Relates to Docket No. 174)**

PS America, Inc., the debtor and debtor-in-possession in the above-referenced case (the "<u>Debtor</u>"), files this Objection to the Motion (the "<u>Motion</u>") of the Official Committee of Unsecured Creditors (the "<u>Committee</u>") for an Order Converting the Debtor's Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code Pursuant to 11 U.S.C. §§ 1112(b) and 105(a), and respectfully states as follows:

**I.**
**BACKGROUND**

1.      On September 30, 2009 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.      On the Petition Date, the Debtor also filed motions or applications seeking certain typical "first day" orders.  The factual background regarding the Debtor, including its current and historical business operations and the events precipitating this chapter 11 filing, is set forth in detail in the *Affidavit of James W. Traweek in Support of First Day Motions and Applications*, fully incorporated herein by reference.

3.      The Debtor has continued in possession of its properties and is operating and managing its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      No request has been made for the appointment of a trustee or examiner.  On October 13, 2009, the Committee was appointed in this case.

5.      Barely six weeks into the case, on November 17, 2009, the Committee filed the Motion, together with its Request for Emergency Consideration and Limited Notice of the Committee's Motion for an Order Converting the Debtor's Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code Pursuant to 11 U.S.C. §§ 1112(b) and 105(a) seeking to have the Motion heard on less than three days' notice.

6.      On November 18, 2009, the Court entered an Order Granting, in Part, Request for Emergency Consideration and Limited Notice of the Committee's Motion for an Order Converting the Debtor's Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code Pursuant to 11 U.S.C. §§ 1112(b) and 105(a).

## II.
## PRELIMINARY STATEMENT

7.      It is transparent that the Committee filed the Motion as leverage based on its misplaced perception that it has been "iced-out" of any negotiations between the Debtor and its DIP lender.

8.      While failing to assert "cause" much beyond a superficial recitation of statutory language and string cites of section 1112 case law, the Committee also fails to address a central problem with its own Motion: the costs of conversion to chapter 7, which would include not only shutting down and destroying a going concern business, with attendant job loss and destruction

of the intrinsic value of the Debtor's operations, but also the statutory fees of a chapter 7 trustee and the time and expense that would be incurred in bringing new professionals up to speed.

9.     Conversion to chapter 7 not only closes the doors of an operating business, it also saddles the estate with more expenses that have little or no possibility of being paid (due to the unavailability of unencumbered assets in which to pay such fees and expenses) and virtually eliminates any chance for creditors to receive a distribution in this case.

10.     Instead, after extensive negotiations, the Debtor is close to documenting an orderly wind-down process with its secured lenders which preserves the going concern value of the Debtor's business, saves hundreds of jobs, provides for the resolution of a number of possibly significant claims by and between the Debtor and its creditors, and provides for a potential for a distribution to unsecured creditors.  This flies in the face of the Committee's assertion that the Debtor will have "no means with which to administer the wind-down of its affairs."  Motion at ¶ 24.  The Debtor hopes to be able to share its wind-down proposal with the Committee within the next few days.

11.     Based on the current facts and circumstances of this case, conversion will not result in any of these positive outcomes, will provide no meaningful benefit to the unsecured creditors of the estate, and would, instead, very likely harm the very constituency the Committee ostensibly seeks to protect, the unsecured creditors of the Debtor.

12.     The Debtor believes that its proposal will show promising results.  Accordingly, the Debtor submits that not only is the Committee's Motion premature, having been brought barely six weeks into this chapter 11 case, it is also without merit.  As set forth herein, the Debtor believes that creditors will obtain a greater recovery from the Debtor's estate in chapter 11 than any recovery that would be available if the assets of the Debtor were liquidated in a closed shop

"fire sale" under chapter 7 of the Bankruptcy Code.  Therefore, the Debtor believes that it is in the best interests of parties in interest to allow the case to remain in Chapter 11 to allow critical negotiations to be completed and the Debtor's intended wind down process to progress to finality.

### III.
### OBJECTION

13.     Conversion is a drastic remedy.  See In re Carowinds Boulevard Homes, Inc., 2000 WL 33710887, at *3 (Bankr. D.S.C. Dec. 18, 2000).  Conversion is especially drastic in the early stages of a case, where the moving party has a significant burden to demonstrate that the reorganization is objectively futile.  Id.; In re 4 C Solutions, Inc., 289 B.R. 354, 364 (Bankr. C.D. Ill. 2003) (recognizing that the earlier in the chapter 11 case, the more reluctant courts are, absent some compelling justification, to abort the statutory confirmation process by ordering conversion).

14.     The U.S. Supreme Court has recognized that two recognized policies underlie chapter 11, preserving going concerns and maximizing property available to satisfy creditors. Bank of America Nat. Trust and Savings Assn. v. 203 North LaSalle Street Partnership, 526 U.S. 434, 453 (1999).  Generally, if continuing a chapter 11 case would promote these two goals, then the case should not be converted.  4 C Solutions, Inc., 289 B.R. at 364; In re Orienta Cooperative Association, 256 B.R. 508, 511 (Bankr. W.D. Okla. 2000).

15.     As noted above, the Debtor's case is barely six weeks old.  The Debtor is close to documenting a wind-down process with its secured lenders which is fundamentally consistent with the policies underlying chapter 11, a process which preserves the going concern value of the Debtor's business, saves hundreds of jobs, provides for the resolution of a number of possibly significant claims by and between the Debtor and its creditors, and provides the potential for a

distribution to unsecured creditors.  Simply put, conversion at this critical stage of the debtor's chapter 11 case is not in the best interest of any party in this case.

**Cause Does Not Exist to Covert This Chapter 11 Case**

16.     One thing is clearly absent from the Committee's Motion, namely any concrete facts to support conversion of this case to chapter 7, instead of a litany conclusory, self-serving allegations taken right out of the language of section 1112 of the Bankruptcy Code.

17.     Section 1112(b) of the Bankruptcy Code provides that a court shall convert or dismiss a case, whichever is in the best interests of creditors and the estate, "for cause."  11 U.S.C. § 1112(b).  Importantly, the burden is on the movant to establish by a preponderance of the evidence that cause justifying either conversion or dismissal of the case exists.  Pensignorkay, 204 B.R. 676, 680 (Bankr. E.D. Pa. 1997); In re Ransom, 191 B.R. 720, 722 (Bankr. N.D. Ill. 1995).  The Committee has failed to meet its high burden here.

18.     The Committee argues that cause exists because (i) there is a continuing loss to or diminution of the Debtor's estate and an absence of a reasonable likelihood of rehabilitation and (ii) it is "unreasonable to expect that a plan can be effectuated."  Motion at ¶¶ 22-26.  In making its arguments, the Committee interestingly does not address any plan per se, rather the Committee relies upon conclusory allegations that "it appears" that any sale of substantially all of the Debtor's assets will not maximize the value of the Debtor's estate.  Although it is uncertain at this stage whether the Debtor will proceed with a sale of all, substantially all, or any portion of its assets, it is clear that an orderly process, provides an efficient method to fully and fairly liquidate the Debtor's assets.

19.     Furthermore, far from how it "appears" to the Committee, the Debtor's proposed and intended strategy will maximize the value of and provide a tangible benefit to the estate,

benefitting all constituencies, whether secured or unsecured creditors, employees, trade vendors, or lease and/or contract counterparties.  As noted above, the Debtor's intended wind down process, which it hopes to share with the Committee within days, will preserve a going concern business, save nearly 200 jobs, provides for the resolution of a number of possibly significant claims by and between the Debtor and its creditors, especially its secured lenders, and provides the potential for a distribution to unsecured creditors.

20.     This result stands in stark contrast to conversion, which would result in an immediate loss of value of the estate once the Debtor's stores go dark, and large deficiency claims by the Debtor's secured lenders, further diluting any potential recovery for unsecured creditors.

21.     Finally, where a debtor is carrying on some business activity, conversion based upon inability to confirm a plan is not properly argued or applied before a plan is filed, when the debtor's ability to accomplish the plan first can be gauged.  See In re Economy Cab & Tool Co. Inc., 44 B.R. 721, 726 (Bankr. D. Minn. 1984) (noting that courts have usually limited application of this ground to cases where a debtor was little other than a corporate shell lacking a place of business, employees, payroll, or discernible economic activity).

22.     In this case, the Debtor is still within the exclusive periods for it to file and solicit a plan pursuant to section 1121(b) of the Bankruptcy Code.  As stated above, this case is still in the very early stages, and the Debtor is informed and believes that significant progress is likely to be made.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter an order (a) denying

the Motion; and (b) granting such other and further relief as is just and proper.


Dated:  November 20, 2009                    Respectfully submitted,


                                             GREENBERG TRAURIG, LLP

                                             */s/ Shari L. Heyen*
                                             Shari L. Heyen
                                             State Bar No. 09564750
                                             Federal Bar No. 13664
                                             HeyenS@gtlaw.com
                                             1000 Louisiana Street, Suite 1700
                                             Houston, Texas 77002
                                             Telephone: (713) 374-3500
                                             Facsimile: (713) 374-3505

                                             *Counsel for PS America, Inc.*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served
electronically on those parties receiving notice via the Court's e-filing system on the 20th day of
November, 2009.


                                             */s/ Shari L. Heyen*
                                             Shari L. Heyen